**LILLEY BUILDING & LOAN CO. v. MILLER, Collector of Internal Revenue.**

(District Court, S. D. Ohio, E. D.    April 12, 1922.)

No. 2105.

1. **Internal revenue ☞7—Corporation dealing principally with nonmembers is not "mutual building and loan association."**

Even though a building association is permitted by Gen. Code Ohio, §§ 9648, 9657, to receive deposits from nonmembers, and make loans to nonmembers, a corporation whose business consisted principally in such dealings with nonmembers for the profit of its stockholders, is not a mutual building and loan association within Revenue Act 1918, § 231 (4) being Comp. St. Ann. Supp. 1919, § 6336⅛o, exempting domestic building and loan associations from the corporate income tax, since the leading feature of such association is that it is conducted on a co-operative basis, with mutual advantages and benefits to its members who share alike in the profits and sustain their proportionate share of the losses.

2. **Internal revenue ☞7—Choice of name under state statute does not determine whether organization is building or savings association.**

Under Gen. Code Ohio, § 9643, permitting the organization of a corporation to raise money to be loaned to its members and to be known as a building and loan association, or as a savings association, the fact that a corporation chooses the designation of building and loan association does not affect its liability for a corporate income tax, from which building and loan associations are exempt, but such liability must be determined from the nature of the corporation's business.

3. **Internal revenue ☞7—Qualifying clause requiring corporations excepted from act of 1918 to be mutual applies to building and loan associations.**

Within Revenue Act 1918, § 231 (4), being Comp. St. Ann. Supp. 1919, § 6336⅛o, exempting domestic building and loan associations and co-operative banks without capital stock organized and operated for mutual purposes and without profit, the qualifying clause as to mutual purpose applies to building and loan associations as well as to co-operative banks, though there was no comma preceding such clause in the original statute, since the contrary interpretation would violate the intention of the act.

4. **Internal revenue ☞7—Fact that building and loan association dealt with nonmembers does not subject it to income tax.**

The fact that a building and loan association makes loans to nonmembers or receives deposits from them does not defeat its exemption from corporate income tax, so long as such transactions are simply incidental to the primary business of operating a mutual building association.

At Law. Action by the Lilley Building & Loan Company against Newton M. Miller, as Collector of Internal Revenue, to recover corporate income taxes paid under protest. Petition dismissed.

Andrew J. Hess, of Sidney, Ohio, Thomas L. Pogue, of Cincinnati, Ohio, and Oscar W. Newman, of Columbus, Ohio, for plaintiff.

James R. Clark, U. S. Atty., of Cincinnati, Ohio, and William J. Ford, Asst. U. S. Atty., of Columbus, Ohio, for defendant.

PECK, District Judge. Action to recover corporate income taxes paid under protest for the years 1918, 1919, and 1920, under the Revenue Act of 1918. 40 Stat. 1057 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.). Submitted on the evidence, without jury. The essential question is whether the plaintiff was exempt from the tax.

Section 231(4) exempts "domestic building and loan associations and co-operative banks without capital stock, organized and operated for mutual purposes and without profit." Comp. St. Ann. Supp. 1919, § 6336⅛o. It is claimed by the government that the plaintiff does a banking business under the guise of a building association; by the defendant, that its activities are no broader than those permitted to be exercised by such associations organized under the laws of Ohio. General Code of Ohio, § 9643 et seq.

The facts are not in dispute. Plaintiff does not hold meetings at stated intervals, as such associations frequently do, but keeps its place of business open during the usual business hours of the day. It receives deposits from nonmembers, evidenced by entries in books such as are ordinarily used by savings banks. Withdrawals may be made on presentation of books. On these accounts (which constitute the bulk of its business) it pays interest at the stated rate of 4 per cent. It also receives time deposits, for which it issues certificates bearing interest at the rate of 5 per cent. It has paid-up stock; also "running stock" on which installment payments are made. Both classes of stock receive semiannual dividends at the rate of 5 per cent. per annum.

Its statement for the year 1920, which may be taken as typical of the period of time involved, shows running stock of $121,000, paid-up stock of $123,000, deposits of $830,000, borrowed money $20,000, and a reserve fund of $18,500 (odd figures are omitted). Its stockholders numbered 301; its borrowers 495 of whom but 2 were stockholders; and its savings depositors were 2,239. Its loans were all made upon homes, the average amount of each being about $3,500. It had no checking accounts. A depositor, wishing to make a withdrawal, presented his passbook and for the amount was given a check to his own order, which he indorsed and returned to the association, receiving thereon the cash. The association then put the check through its bank. Its mortgage loans were usually payable in monthly installments. The few loans made to members took the same course as those to nonmembers. The borrowing members gave their notes and paid them off in installments, such obligations being entirely disassociated from their obligations to pay for stock. The ordinary building association method of subscribing for stock to the amount of the loan, the stock, when paid up, extinguishing the loan, was not pursued.

It will be observed that about 80 per cent. of its receipts and 97 per cent. of its loans are transactions with nonmembers. Thus by far the greater number of those with whom it does business have no interest in its profits, and as long as it remains solvent, they have none in its losses. The earnings accrue to the stockholders. Mutuality of interest between the stockholders, on the one hand, and the depositors and borrowers, on the other, is lacking.

[1] This course of business seems to be within its charter powers as prescribed by the statutes of Ohio, particularly sections 9648 and 9657, General Code of Ohio. It does not, however, conform to the general conception of the functions of such an association.

"Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to be loaned

among themselves, or such as may desire to avail themselves of the privilege." Eversmann v. Schmitt, 53 Ohio St. 175, 184, 41 N. E. 139, 141 (29 L. R. A. 184, 53 Am. St. Rep. 632).

"The leading feature of such an association is that its members are kept upon a strictly co-operative basis, with mutual advantages and benefits, sharing alike in the profits and sustaining their proportionate share of the losses." 4 R. C. L., "Building and Loan Associations," p. 344.

In Halsell v. Merchants' Insurance Co., 105 Miss. 268, 62 South. 235, 645, Ann. Cas. 1916E, 229, a concern organized under the Building Association Act of the state of Mississippi, with powers similar to those exercised by the plaintiff, was held not to be such an association in the real meaning of the term. Having regard, therefore, to its general character, as distinguished from its mere charter powers, there is no doubt that the business conducted was in the main not that of a building association as ordinarily conceived.

[2] Plaintiff's counsel, however, contend that the definition adopted by the statutes of Ohio of the term "building association," and not that of general usage, is controlling. But it must be remarked that the statutes referred to do not attempt to define a "building association," as distinguished from a "savings association":

"A corporation for the purpose of raising money to be loaned to its members shall be known * * * as a 'building and loan association' or as a 'savings association.' " G. C. § 9643.

The statutes carry the distinction no further. Both are treated alike. The same powers are conferred on each. Such a corporation may combine both phrases or parts thereof in its name. It may as truly be said that the corporation is designated a "savings association" as a "building association" by the laws of Ohio. Plaintiff has named itself a "building association." It might have named itself a "savings association." Its powers, liabilities, structure, character, and place in the law would have been the same. It may even now change its name to a "savings association." Would it be exempt as a "savings association"? If not, would it secure exemptions by such change of name; its character remaining precisely the same?

[3] It is pointed out that the Revenue Acts of 1909 (36 Stat. 11) and 1913 (38 Stat. 114) exempted domestic building and loan associations "organized and operated exclusively for the mutual benefit of their members"; that these qualifying words were omitted in the act of 1918; that they were restored in the act of 1921 in this phraseology:

" * * * Domestic building and loan associations, substantially all the business of which is confined to making loans to members."

And it is argued that the omission of such language in the 1918 statute indicates a purpose of Congress to exempt all corporations organized as domestic building associations under the laws of the several states, without any condition or qualification whatsoever; that Congress took them with their charter powers and their activities as they existed, and exempted them from the tax; and it is further insisted that the intention of Congress to tax them must clearly appear, and that they are not to be taxed by implication. Gould v. Gould, 245

U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211. But did Congress omit the qualifying language in the act of 1918?

Having resort to the text of the act itself, it is to be noticed that the exception concludes with the words "organized and operated for mutual purposes and without profit." In Holmes, Federal Taxes (1922 Ed.) p. 318, the author puts a comma before this clause, indicating an interpretation that would make these words modify, not only co-operative banks, but building associations. While the comma is not found in the act, and the usual presumption is that a phrase modifies its immediate antecedent, yet there is good reason for taking these words as referring to both antecedents. By so doing, the act is in conformity with the general policy of the acts of 1909, 1913, and 1921. Furthermore, there seems to be just as much reason for requiring that building associations, to be exempt, must be organized and operated for mutual purposes and without profit as there is for applying that requirement to co-operative banks.

Plaintiff's interpretation is that corporations organized under building association laws are exempt, although operated not for mutual purposes and with a profit to a limited number of stockholders, be they ever so few. Such an interpretation would seem to violate the intent of the act. Recurring to the matter of nomenclature under the Ohio statutes, if we regard the plaintiff as a "savings association," we would have a mutual bank, with capital stock, not organized and operated for mutual purposes, and not without profit. The matter certainly cannot rest so lightly as on the arbitrary choice of a name. The facts must control. But if it be linguistically inaccurate to take the adjective phrase in question as modifying "building associations," nevertheless the rule of "noscitur a sociis," which, in this instance, it seems proper to apply, would lead to the same interpretation.

[4] It is not thought that the making of loans to nonmembers, or borrowing from nonmembers, or receiving deposits to be withdrawn on demand or on time, so long as such transactions are simply incidental to the primary business of operating a mutual building association, would defeat the exemption. In Central Building, Loan & Savings Co. v. Bowland (D. C.) 216 Fed. 526, the question was whether the existence of such powers necessarily put the corporation out of the exempt class, and it was concluded that it did not, and that conclusion is thoroughly concurred in. But here the association has put aside the attribute of mutuality; indeed, it is most difficult to distinguish its activities from those of the ordinary savings bank. Its primary design no longer is to be an instrumentality of mutual helpfulness among its contributors in saving and borrowing for home owning; but its object now is the receiving of deposits from, and lending money on interest to, the public for the profit of the stockholders.

Counsel argue that the people are better served thus; that mutuality is inefficient; that a concern of ten stockholders and many customers is more beneficial to the public than one containing in its body corporate all of its depositors and borrowers. This may be true. But the statute has not exempted all corporations that receive deposits and loan money on homes. It may not be possible to define precisely how

far a building association may go in extraneous activities without losing its essential character; but it seems clear that, when it ceases to be substantially mutual and adopts as its chief business dealing for profit with the general public by the methods of an ordinary savings bank, it is no longer a building association, entitled to be exempted from income taxation under the statute in question.

It is therefore concluded that the petition must be dismissed