### APPEAL OF JOHNSTOWN BUILDING & LOAN ASSOCIATION.

Docket No. 2898.     Promulgated March 12, 1927.

BUILDING AND LOAN ASSOCIATION.—A corporation organized under state building and loan association laws, which has so far departed from the practices of such associations that by far the larger portion of its business is transacted with nonmembers, *held* to have forfeited its exemption from income taxes under section 231 (4) of the Revenue Acts of 1918 and 1921, and to be subject to taxes imposed by sections 230 and 301 of said Acts.

*L. L. Hamby, Esq.*, for the petitioner.
*J. A. Adams, Esq.*, for the Commissioner.

Under date of January 28, 1925, the Commissioner served notice on the above-named taxpayer of his determination of income and profits-tax liability for the years 1918 to 1922, inclusive, indicating an over-assessment of $99.87 for the year 1918, and asserting deficiencies for 1919 in the amount of $965.80; for 1920, $481; for 1921, $119.87, and for 1922, $500, such deficiencies aggregating $2,066.67, and thereafter this proceeding was brought for a redetermination of such deficiencies.

The issue presented for our determination is whether during the years 1919 to 1922, inclusive, the petitioner was an organization exempt from income and profits taxes under the provisions of section 231 (4) of the Revenue Acts of 1918 and 1921.

#### FINDINGS OF FACT.

The Johnstown Building & Loan Association was organized pursuant to the statutes of the State of Ohio in the year 1889, and has since continuously carried on its business at Johnstown in that State.

On January 1, 1919, its membership consisted of 58 holders of fully paid-up stock aggregating 771 shares. At the same time it had an undisclosed number of subscribers for so-called running or installment stock. On January 1, 1922, there were 50 members holding fully paid-up stock and having 1,197 shares.

On January 1, 1919, and during the years 1919 to 1922, inclusive, it made loans to stockholders and nonstockholders to the number and in the aggregate amounts as follows:

| Period. | Loans to stockholders. | | Loans to nonstockholders. | |
|---|---|---|---|---|
| | Number of loans. | Amount of loans. | Number of loans. | Amount of loans. |
| Outstanding Jan. 1, 1919 | 161 | $167, 300. 00 | 116 | $397, 100. 00 |
| During 1919 | 7 | 8, 350. 00 | 93 | 341, 550. 00 |
| During 1920 | 2 | 4, 150. 00 | 72 | 238, 850. 00 |
| During 1921 | None. | None. | 48 | 99, 600. 00 |
| During 1922 | 68 | 164, 525. 00 | 2 | 13, 000. 00 |
| Total | 238 | 344, 325. 00 | 331 | 1, 088, 100. 00 |

During the years 1919 to 1922, inclusive, it received deposits from stockholders and from nonstockholders in the amounts shown as follows:

| Year. | Deposits from stock-holders. | Deposits from nonstock-holders. | Total deposits. |
|---|---|---|---|
| 1919 | $29, 400. 00 | $371, 475. 84 | $400, 875. 84 |
| 1920 | 19, 650. 00 | 322, 684. 54 | 342, 334. 54 |
| 1921 | 26, 250. 00 | 177, 582. 75 | 203, 832. 75 |
| 1922 | 26, 200. 00 | 202, 536. 43 | 228, 736. 43 |
| Totals | 101, 500. 00 | 1, 074, 279. 56 | 1, 175, 779. 56 |
| Ratio | 9% | 91% | 100% |

During these same years it borrowed funds from other building and loan associations and other financial institutions. Of the total loans either outstanding or made during the years 1919 to 1922, inclusive, 76 per cent of the aggregate were loans made to individuals or firms who were not members or stockholders of the association. During these years it paid interest on deposits at the rate of 5 per cent per annum and charged interest on loans at the rates from 6 to 7 per cent per annum. Approximately 91 per cent of the deposits were received from, and approximately 76 per cent of the loans were made to, persons who were neither stockholders nor members of the association. During these years frequently several loans would be made to the same person who was in the business of building houses for sale.

During the year 1919 there were no loans made to subscribers for running stock and only three loans, aggregating $2,900, were made to subscribers for installment stock. During the years 1920 and 1921 there were no loans made to subscribers for either running or installment stock. During the year 1922, following the enactment of the Revenue Act of 1921 and the decision of the United States District Court in the case of *Lilley Building & Loan Co.* v. *Miller,* 280

Fed. 143, which was decided in April, 1922, petitioner changed its practice of making loans to persons who were not stockholders, and during that year it made 65 loans, aggregating $164,525, to persons who subscribed for 175 shares of running stock in amounts ranging from 1 to 5 shares to each subscriber.

During the years 1919 to 1922, inclusive, in its annual financial statement, petitioner showed gross income from all sources and the distribution thereof as follows:

| Year. | Gross income. | Distribution of gross income. | |
|-------|---------------|-------------------------------|---|
| 1919 | $40,406.56 | Operating expenses | $4,550.92 |
| | | Interest on borrowed money and savings accounts | 19,695.48 |
| | | Reserve fund credit | 3,965.10 |
| | | Undivided profits credit | 4,122.21 |
| | | Dividends on stock and loan credits | 8,072.85 |
| | | | 40,406.56 |
| 1920 | 48,609.14 | Operating expenses | 6,164.15 |
| | | Interest on borrowed money and savings accounts | 29,565.03 |
| | | Reserve fund credit | 3,650.08 |
| | | Undivided profits credit | 60.85 |
| | | Dividends on stock and loan credits | 9,169.03 |
| | | | 48,609.14 |
| 1921 | 50,780.10 | Operating expenses | 5,914.79 |
| | | Interest on borrowed money and savings accounts | 33,115.08 |
| | | Reserve fund credit | 807.50 |
| | | Undivided profits credit | 1,569.75 |
| | | Dividends on stock and loan credits | 9,372.98 |
| | | | 50,780.10 |
| 1922 | 24,068.84 | Operating expenses | 2,889.11 |
| | | Interest on borrowed money and savings accounts | 15,187.92 |
| | | Reserve fund credit | 1,080.72 |
| | | Undivided profits credit | 298.20 |
| | | Dividends on stock and loan credits | 4,612.89 |
| | | | 24,068.84 |

At the end of the same years the liability side of its balance sheets appeared as follows:

| | 1919. | 1920. | 1921. | 1922. |
|---|-------|-------|-------|-------|
| Running stock and accrued dividends | $18,558.84 | $16,377.20 | $18,129.61 | $24,157.85 |
| Paid-up stock and accrued dividends | 108,861.07 | 124,351.86 | 123,291.00 | 118,862.00 |
| Credits on mortage loans | 71,057.28 | 104,165.73 | 122,657.76 | 129,238.10 |
| Savings accounts and accrued interest | 26,929.21 | 51,206.96 | 65,646.14 | 80,154.65 |
| Deposits and accrued interest | 548,360.26 | 573,149.32 | 543,321.09 | 551,600.82 |
| Deposits of other building associations | 5,000.00 | 10,000.00 | 10,000.00 | 16,050.00 |
| Deposits of other financial institutions | 12,500.00 | None. | 5,000.00 | 10,000.00 |
| Reserve fund | 20,000.00 | 24,000.00 | 25,000.00 | 29,000.00 |
| Undivided profit fund | 8,641.21 | 8,702.06 | 10,271.81 | 11,111.70 |
| Miscellaneous | 4,338.65 | 1,074.93 | 734.93 | 734.93 |
| Totals | 824,253.15 | 913,028.06 | 934,052.34 | 970,910.05 |

The constitution of this organization provides that the capital stock shall be $1,000,000, divided into 8,000 shares of $100, $400, and $500 each; that at any meeting of the association no stockholder may vote more than 20 shares. "Weekly meetings of the Association

and the Board of Directors, for the receipt of money, the making of loans, and for the transaction of all the ordinary business of the Association, shall be held at the office of the Association at such times as the By-Laws may provide." The by-laws provide that "regular meetings of the Board shall be held at the offices of the Association on Monday of each week at 7 : 30 o'clock p. m. Special meetings may be called at any time by the President or Secretary." During the years here under consideration the association maintained a regular business office open for the transaction of business during the ordinary business hours of each day.

## OPINION.

TRUSSELL: Section 231 of the Revenue Act of 1918 provides that certain corporate organizations shall be exempt from the corporation income tax imposed by that Act, and subdivision (4) of that section is in the following language:

Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

The same section and subdivision of the Revenue Act of 1921 contains a like exemption in the following language:

Domestic building and loan associations substantially all the business of which is confined to making loans to members; and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

Substantially similar provisions, although in varying language, will be found in each of the other revenue acts from 1909 to 1926, inclusive.

When Congress, in these acts levying income taxes, consistently granted to building and loan associations a favored position among other corporations, we have no doubt it did so on account of what it regarded as the well known and universally recognized peculiar characteristics of these organizations, and the legislative mind appears to have had no doubt that the plain lines of distinction between building and loan associations and other corporations would be found to be so apparent that there would be little, if any, difficulty, in distinguishing those organizations exempt from those organizations upon which corporate income and profits taxes were levied.

What is a building and loan association? Endlich, in his treatise on the law of building associations, in section 1, says:

The building association is an institution in modern society. Its plan was designed to meet the wants and accommodate itself to the peculiar needs of men whose little earnings can only be slowly raised to an effective bulk. As a corporation it is the creature of the legislative policy and not of legislative caprice. In its essential plan and nature it is the same all over the world, springing from the same considerations, ministering to the same necessities,

achieving the same results. The similarity existing between the statutes and usages relating to building associations in the various states and countries is neither accident nor simply imitation. It has at once the evidence and recognition of identical requirements of society in the various communities.

And further, in section 7, he states:

The idea of which first gave rise to the institution of building associations, which furnished their ostensible and legitimate *raison d'etre* and which secured to them their popularity and their, in many respects, exceptionally favored position before the law, is that of enabling persons belonging to a class whose earnings are small, and with whom the slowness of the accumulation discourages the effort, to become, by a progress of gradual and compulsory savings either at the end of a certain period, or by anticipation of it, the owners of homesteads.

The Supreme Court of the State of Ohio, in the case of *Eversman* v. *Schmitt*, 53 Oh. St. 174; 41 N. E. 139, said:

Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to be loaned among themselves, or such as may desire to avail themselves of the privilege. This is done by the payment at stated times of small sums, in the way of dues, interest on loans, and premiums for loans. Each shareholder, whether a borrower or nonborrower, participates alike in the earnings of the association and alike assists in bearing the burden of losses sustained.

Since the incidence of income taxation, Federal courts have in several cases been called upon to construe and interpret the provisions of the several statutory exemptions of building and loan associations upon the facts of each case. The first case arose in the State of Washington, *Pacific Building & Loan Assn.* v. *Hartson*, 201 Fed. 1011; 1 Am. Fed. Tax Rep. 249–254, where the court sustained a demurrer in an action for recovery of taxes paid under the Revenue Act of 1909, the court finding that the mutuality which should exist between members of a building and loan association was, in that case, destroyed by reason of preferences among stockholders. The record in this case also discloses that in the selection of a directory all stockholders who were not in arrears voted by shares, thus giving the control of the corporation to the majority of shares rather than the majority of members. The next case in point of time arose in the State of New Jersey, *Parkview Building & Loan Assn.* v. *Herold*, 203 Fed. 876; 1 Am. Fed. Tax Rep. 258. This case also arose under the Revenue Act of 1909, and in its opinion the court said:

* * * It will be observed that under the law each member has the same right to dictate the policy of the association. It does not increase his influence to own many shares of stock, because his right to vote does not depend upon the number of shares that he may hold, but simply upon his membership. * * * There is therefore a mutuality of right with respect to the control of the corporation. Nor do we think that the mere provision in the fifty-third

section of the act for agreements to pay 5 per cent. interest to shareholders who pay the full par or maturity value of their shares affects the mutuality. It is not contemplated by the act that the shareholders who pay in advance shall have any priority in distribution of assets. There is therefore mutuality between the shareholders with respect to the assets of the corporation. * * * The mere fact that there may be an inequality in the returns to the prepaying shareholder and the other shareholder in favor of the one or the other does not seem to the court to destroy the mutuality among the shareholders required by the proviso of the act of Congress.

The word "mutual" cannot always be considered a synonym of "equal." * * *

The court then distinguishes the case of the *Pacific Building & Loan Assn., supra*, and finds that the organization is entitled to the exemption provided by the Act of 1909.

This case was carried to the Circuit Court of Appeals where it was affirmed. 210 Fed. 577.

The next cases to reach the United States courts were *Central Building, Loan & Savings Co.* v. *Bowland*, and *Bellefontaine Building & Loan Co.* v. *McMaken*. These cases arose in the State of Ohio and were reported in 216 Fed. 526; 1 Am. Fed. Tax. Rep. 353. These cases revolve mainly around the question of whether the laws of the State of Ohio relating to building and loan associations and authorizing them to borrow funds from nonmembers, and to make loans to nonmembers, did of itself defeat the privilege of exemption granted by the Revenue Act of 1909. After an exhaustive discussion of this subject and the citation of authorities, the court concluded:

That building associations under the laws of Ohio, notwithstanding their power to borrow money from or loan money to nonmembers are "organized and operated exclusively for the mutual benefit of their members," [and] come strictly within the proviso giving them exemption from the tax in question.

The next case in chronological order to reach the United States courts was that of the *Lilley Building & Loan Co.* v. *Miller*, which will be referred to later.

In August, 1923, the United States District Court for the Northern District of Ohio, in the case of *Acklin* v. *People's Savings Assn.*, 293 Fed. 392; 4 Am. Fed. Tax Rep. 3643, had occasion to pass upon the question of whether the Peoples Savings Association was exempt from corporate income taxes under the Act of 1921. And in discussing that case the court, among other things, said:

We must hold, therefore, that the Commissioner of Internal Revenue cannot deny exemption to a true building and loan association simply because it does not require each borrowing member to subscribe for an amount of stock equal to the face of his loan. Neither is there anything in the act conferring authority on the Commissioner to determine the qualifications of members, nor does the language of the act imply such a qualification. The Commissioner of Internal Revenue would be justified in denying exemption to a so-called building and loan association which was not operating on a strictly

mutual basis, because such an association would not be a true building and loan association. It might call itself a building and loan association, and it might be operating under the building and loan association law of some state; but it would not be such within the meaning of the Revenue Act of 1921. Mutuality is the essential principle of a building and loan association. The object is to raise money to be loaned to members. The qualification of membership is a mere incident, and is not important, if undiscriminating and definite, if mutuality is present. The object of the true building and loan association is to provide the means by which any person can join with others in loaning money, and obtain substantially all of the benefits of the transaction subject only to a minimum expense of operation, and whereby one can borrow money from the association at the lowest practical charges, subject only to unavoidable charges for operation. The borrower and the lender are thus brought together, and each benefits from his association with the other, and each obtains the maximum of benefits with a minimum of expense.

Considering the terms of the act and the history of the legislation as just referred to, the function of a modern building and loan association, and the structure and operations of building and loan associations doing business at the time the law was enacted, no room exists for the claim that the borrowing members must qualify by subscribing to any particular amount of stock. It must be that Congress had in mind that true building and loan associations operated for mutual purposes, and that any association which maintains the requisite mutuality is entitled to exemption, entirely without regard to the amount of stock subscribed by its borrowing members. This conclusion is so clear, considering all that is before us, that there seems to be no color of right to the denial of the exemption in the case before the court.

*       *       *       *       *       *       *

We see no conflict between our conclusions in the instant case and the decision in *Lilley Building & Loan Co.* v. *Miller* (D. C.) 280 Fed. 143. Of course an association cannot carry on a banking business and operate on a mutual basis, which is the controlling criterion of a building and loan association. Until Congress shall furnish a standard or definition, it must be held that a building and loan association, which confines its business to making loans to members, and does not attempt a banking business, and operates on a strictly mutual basis, so that all its members participate equitably, and without particular benefit to any class, is exempt, and that the real test is mutuality, and that no other test can be injected or substituted. In view of the foregoing, the court must hold that the People's Savings Association is exempt from taxation, and that the demands made upon it are illegal, and without color or authority of law.

In the case of the *Lilley Building & Loan Co.* v. *Miller*, 280 Fed. 143; 2 Am. Fed. Tax. Rep. 1652, the court had under consideration a case arising under the Revenue Act of 1918, in which the facts as found bear a marked resemblance to the facts in the instant case. The Lilley Building & Loan Co. maintained a place of business open during the usual hours of each business day, where it received deposits from nonmembers. It paid 4 per cent on savings accounts and 5 per cent on time certificates of deposit. It issued both a paid-up and installment stock and, in the year 1920, its financial statement showed (odd figures omitted) running stock, $121,000; paid up stock, $123,000; deposits, $830,000; borrowed money, $20,000;

reserve fund, $18,500. It had 301 stockholders; its borrowers numbered 495, of whom but two were stockholders, and its savings depositors numbered 2,239. Its loans were all made upon homes, the average amount of each being about $3,500. It had no checking accounts. The borrowing members gave their notes and paid them off in installments, such obligations being entirely disassociated from their obligations to pay for stock. About 80 per cent of its receipts and 97 per cent of its loans were transactions with nonmembers; thus by far the greater number of those with whom it did business had no interest in its profits, and as long as it remained solvent they had none in its losses. Mutuality of interest between the stockholders on the one hand and the depositors and borrowers on the other was lacking. In respect to this situation the court said:

This course of business seems to be within its charter powers as prescribed by the statutes of Ohio * * *. It does not, however, conform to the general conception of the functions of such an association. * * *

It is not thought that the making of loans to nonmembers, or borrowing from nonmembers, or receiving deposits to be withdrawn on demand or on time, so long as such transactions are simply incidental to the primary business of operating a mutual building association, would defeat the exemption. * * * But here the association has put aside the attribute of mutuality; indeed, it is most difficult to distinguish its activities from those of the ordinary savings bank. Its primary design no longer is to be an instrumentality of mutual helpfulness among its contributors in saving and borrowing for home owning; but its object now is the receiving of deposits from, and lending money on interest to, the public for the profit of the stockholders. * * * The statute has not exempted all corporations that receive deposits and loan money on homes. It may not be possible to define precisely how far a building association may go in extraneous activities without losing its essential character; but it seems clear that, when it ceases to be substantially mutual and adopts as its chief business dealing for profit with the general public by the methods of an ordinary savings bank, it is no longer a building association, entitled to be exempted from income taxation under the statute in question.

The decision in this case was affirmed by the Circuit Court of Appeals for the Sixth Circuit, 285 Fed. 1020; 2 Am. Fed. Tax Rep. 1823.

It has been argued that subdivision (4) of section 231 of the Revenue Act of 1918 should be read as if the words "domestic building and loan associations" stood alone in that subdivision. This same argument was apparently made in the Lilley case, supra, and was definitely rejected by the court, which held that the modifying phrase "organized and operated for mutual purposes and without profit" applied to both its substantive antecedents, thus bringing the Act of 1918 into substantial agreement with the provisions of all the Acts of 1909, 1913, 1916, and 1921.

It thus appears that all the authorities agree that the distinguishing feature characteristic of building and loan associations is the

substantial mutuality of benefit or its reverse existing between all members of each association, and that Congress in all of the Acts of 1909 to 1921 has granted an exemption from income and profits taxation only to those associations organized for mutual benefit or mutual purposes; that all of the authorities above cited agree that some measure of departure, like the borrowing of funds from nonmembers or the making of loans to nonmembers when done merely as an incident to the general purpose of the organization, does not defeat the exemption. The court in the *Lilley* case has definitely held that, when an organization so far departs from the general purposes of a building and loan association and enters the field commonly occupied by savings banks and mortgage loan companies to the extent disclosed by the facts in that case, the organization is no longer operated along the lines peculiar to building and loan associations and, therefore, loses its right to exemption from corporate income and profits taxes.

In the case at bar it will be observed that during the years 1918 to 1921, inclusive, a very large proportion of petitioner's funds was procured from nonmembers who received a definite and fixed rate of interest; that a still larger proportion of its loans were made to nonmembers as straight mortgage loans with fixed rates of interest; and that the loans made to members were nearly all made upon the basis of straight mortgage loans, fixed rates of interest and definite terms of payment, and not in accord with the other usual methods peculiar to building and loan associations. In view of these and all the facts disclosed by the record, we are of the opinion that the petitioner, in respect to its business during the years 1919 to 1921, inclusive, had so far departed from the methods and practices of a building and loan association as to have abdicated its favored position under the Revenue Acts of 1918 and 1921 and to have placed itself in line and in competition with other financial organizations, such as savings banks with a paid-in capital and mortgage loan companies, all of which must pay income and profits taxes, and that this petitioner, having chosen to follow the course as disclosed by the record, must accept the consequences of liability to income and profits taxes, and we therefore hold that for each of said years 1918 to 1921, inclusive, this petitioner is not entitled to the benefits of the exemption provided by section 231 (4) of the Revenue Acts of 1918 and 1921.

While the record shows that during the years 1919 to 1921, inclusive, the petitioner had practically abandoned its charter as a building and loan association and had engaged in the business of borrowing funds from nonmembers and loaning the same to other nonmembers in a manner similar to taxable organizations engaging in the mortgage loan business, it also appears that, in the year 1922,

following the decision in the case of *Lilley Building & Loan Co.* v. *Miller, supra,* and the enactment of the Revenue Act of 1921, the petitioner undertook to, and did, so modify its methods of carrying on business as to bring itself back into line with the system commonly peculiar to building and loan associations, that all but two of its loan transactions made in the year 1922 were made to members, and, having thus evidenced a purpose to then and thereafter conduct its business according to the usual methods of building and loan associations, we are of the opinion that for the calendar year 1922 the petitioner is entitled to the exemption provided for in section 231 (4) of the Revenue Act of 1921.

> *For the calendar years 1919, 1920, and 1921, the deficiencies are redetermined to be $965.80, $481, and $119.87, respectively, and there is no deficiency for the calendar year 1922. Judgment will be entered in due course.*