BROADVIEW SAVINGS & LOAN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6425. Promulgated February 14, 1928.

*Herbert W. Nauts, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

726

**728**

OPINION.

TRAMMELL: The petitioner here contends that it is exempt from income taxation for the calendar year 1922 under the provisions of section 231 (4) of the Revenue Act of 1921, the pertinent part of which reads as follows:

SEC. 231. That the following organizations shall be exempt from taxation under this title—

\*       \*       \*       \*       \*       \*       \*

(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; \*   \*   \*

The respondent denied the petitioner's claim for exemption, and determined the deficiency involved herein. The burden is, therefore, upon the petitioner to show that it comes within the classification of the exemption provided in the statute. As stated by the court in *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410—

The plaintiff claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception.

In order to discharge the burden which it had assumed, the petitioner must establish (1) that, during the calendar year 1922, it was

a domestic building and loan association within the meaning of the statute, and (2) that during said year substantially all of its business was confined to making loans to members. Two broad and closely associated questions are thus presented, which will be considered in the order indicated.

First, was the petitioner, during the year 1922, a " domestic building and loan association," within the meaning of the statute? Section 1 of the Revenue Act of 1921 defines the term " domestic " when applied to a corporation as meaning " created or organized in the United States." Since the petitioner was organized in the United States under the laws of Ohio, it clearly meets the qualifications of the term " domestic," if during 1922 it was in fact a building and loan association.

In *Johnstown Building & Loan Association*, 6 B. T. A. 463, we considered at some length the qualifications necessary to constitute a building and loan association as that term is used in the various revenue acts, and reviewed the prior decisions of the Federal courts relating to the exemption of such association. In that connection we said:

When Congress, in these acts levying income taxes, consistently granted to building and loan associations a favored position among other corporations, we have no doubt it did so on account of what it regarded as the well known and universally recognized peculiar characteristics of these organizations, * * *.

See also *The Owl Building & Loan Association*, 6 B. T. A. 1196. It is unnecessary here to retrace the field covered in our prior decisions, or to review the history and development of building and loan associations. It is sufficient to point out the predominant and universally recognized characteristics of such associations, and then examine the facts in the record before us, to determine whether or not the petitioner, during the taxable year, possessed such characteristics.

A fundamental attribute of the true building and loan association is that of mutuality. In *Eversman* v. *Schmitt*, 53 Ohio St. 174; 41 N. E. 139, the Supreme Court of Ohio said:

Mutuality is the essential principle of a building association. Its business is confined to its own members; its object being to raise a fund to loan among themselves, or such as may desire to avail themselves of the privilege. * * * Each shareholder, whether a borrower or nonborrower, participates alike in the earnings of the association and alike assists in bearing the burden of losses sustained.

But the mutuality peculiar to building and loan associations is not confined alone to the participation of the members in sharing profits and losses. Such mutuality pertains also to the members of an ordinary commercial partnership or association, and to the stockholders of an ordinary corporation engaged in a business enterprise for profit, the income of which is subject to tax. The mutuality

essential to a building and loan association must include not only a mutuality of right with respect to the control of the association and a mutuality with respect to the assets of the association, but its primary design must be that of an instrumentality of mutual helpfulness among its members in saving and borrowing for home owning. *Lilley Building & Loan Co.* v. *Miller*, 280 Fed. 143.

Fletcher, in his treatise on the law of private corporations, says at page 136:

An incorporated building and loan association is a corporation for the purpose of raising, by periodical subscriptions of members, a stock or fund to assist members by advances or loans, generally on mortgage security, in building or purchasing homes.

In 9 C. J. 923, it is stated:

A body, to be classed as a building and loan association, must be a mutual association, formed for the purpose of loaning money for home building; * * *

The fact that a corporation calls itself a building and loan association, or that it operates as such under the laws of a State, is not determinative of its true character. If the mutuality requisite to a building and loan association is lacking, it is not entitled to exemption from the Federal income tax.

In the Lilley case, *supra*, which arose under the Revenue Act of 1918, the material facts were strikingly similar to those in the present case. The court there denied the claim of exemption on the ground that the corporation had ceased to be substantially mutual, and had adopted as its chief business dealing for profit with the general public by the methods of an ordinary savings bank. The court found that the requisite mutuality had ceased to exist because of the methods pursued by the corporation in the conduct of its business.

The facts in the Lilley case show that for the year 1920 the plaintiff corporation had running stock of $121,000, paid-up stock of $123,000, deposits of $830,000, borrowed money $20,000, and a reserve fund of $18,500 (odd figures omitted). It had 301 stockholders, 495 borrowers, of whom but two were stockholders, and 2,239 depositors. Its loans were all made upon homes, the average amount of each being about $3,500. It had no checking accounts, and deposits could be withdrawn by a depositor only upon presentation of his pass book. Its mortgage loans were usually payable in monthly installments. The court, in its opinion, said:

It will be observed that about 80 per cent of its receipts and 97 per cent of its loans are transactions with nonmembers. Thus by far the greater number of those with whom it does business have no interest in its profits, and as long as it remains solvent, they have none in its losses. The earnings accrue to the stockholders. Mutuality of interest between the stockholders, on the one hand, and the depositors and borrowers, on the other, is lacking.

It is not thought that the making of loans to nonmembers, or borrowing from nonmembers, or receiving deposits to be withdrawn on demand or on time, so long as such transactions are simply incidental to the primary business of operating a mutual building association, would defeat the exemption. * * * But here the association has put aside the attribute of mutuality; indeed, it is most difficult to distinguish its activities from those of the ordinary savings bank. Its primary design is no longer to be an instrumentality of mutual helpfulness among its contributors in saving and borrowing for home owning; but its object now is the receiving of deposits from, and lending money on interest to, the public for the profit of the stockholders.

The judgment of the District Court in the *Lilley* case was affirmed by the Circuit Court of Appeals, Sixth Circuit, which, in a *per curiam* opinion (285 Fed. 1020), said:

District Judge Peck, in a considered opinion * * * held plaintiff not exempt. We approve, not only this conclusion, but the reasoning upon which it is based.

In the case at bar, the facts show that, during 1922, the petitioner received the total amount of $292,475.41 as repayments on loans. At the beginning of the year, it had total outstanding loans in the amount of $742,654.08, of which the amount of $702,696.41, or more than 94 per cent, represented loans made to nonmembers. At the close of 1922, the petitioner had outstanding loans in the amount of $859,078.67, of which at least the amount of $471,945.11, or more than 54 per cent, represented loans made to nonmembers. Thus the bulk of its business in that year, in so far as it related to repayments on loans, consisted of transactions with nonmembers.

During the calendar year 1922, the petitioner made 85 mortgage loans ostensibly to members for home-owning purposes, in the amount of $378,000 and loaned the sum of $10,425 to members on stock collateral for other than home-owning purposes. It also purchased seven mortgages from a nonmember in the total amount of $30,900. Thus, during 1922, the petitioner made loans of all kinds in the aggregate amount of $419,325, of which the amount of $378,000 was made to members. However, the facts indicate that of the 85 mortgage loans made to members, 54 thereof, amounting to $217,650, or more than 57 per cent of the total amount, were in effect loans made to nonmembers through the instrumentality of contractors who were stockholders of the petitioner. In other words, 57 per cent of the loans made during the year were not for the purpose of enabling the stockholders to become home owners but to build or purchase houses for sale. Of its total loans made during the year, 61.76 per cent were made for investment purposes, or purposes other than to enable its members to become home owners, only 38.24 per cent of the loans being made for the latter purpose.

During 1922, the petitioner had 898 stockholders, to not more than 31 of whom it made mortgage loans in order to enable them to become home owners. During that year, the petitioner also had 181 bor-

rowers, 1,001 depositors, and received deposits in the amount of $291,571.81. The record does not disclose what number of the depositors were also stockholders of the petitioner and what number were nonstockholders, but it is disclosed that the petitioner solicited and accepted deposits from the general public without regard to the borrowing needs of its members, and paid 5 per cent interest on the deposits, from which it made loans at 7 per cent interest. Comparing the number of stockholders, the number of depositors, the amount of deposits received, and considering other pertinent facts in the record, it is obvious that a comparatively small percentage of the depositors were stockholders. It thus appears that during 1922 most of the petitioner's business, in so far as it consisted of transactions relating to deposits, was transacted with nonmembers.

During 1922, the petitioner derived a total income of $72,314.78, of which $41,194.33, or approximately 56.96 per cent, was received from nonstockholders, approximately 36.35 per cent was received from stockholders, and about 6.59 per cent was received from other sources. Thus, so far as it may be indicated from the income received, the bulk of the petitioner's business during 1922 was transacted with nonmembers.

A consideration of the foregoing facts leads to the conclusion that during 1922 the petitioner did not possess the mutuality requisite to a true building and loan association, and that it is therefore not entitled to exemption from the income tax. As stated in the *Lilley* case, *supra*, mutuality of interest between the stockholders on the one hand and the depositors and borrowers on the other, was lacking. Accordingly, the determination of the respondent is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*