HOME BUILDING & SAVINGS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11898.   Promulgated June 1, 1928.

*L. L. Hamby, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

294

SIEFKIN: The sole question to be decided is whether the petitioner, during the years in controversy, was a domestic building and loan association, exempt from taxation under the Revenue Acts of 1917, 1918, and 1921.

During the year 1918, the petitioner made loans on mortgage security in the amount of $371,028.98, of which $198,158.98, or approximately 53.41 per cent, was to members or stockholders, and $172,870, or approximately 46.59 per cent, was to nonmembers or nonstockholders. During the year it also made loans to members on stock or pass-book security in the amount of $22,935. At December 31, 1918, there were outstanding loans in the amount of $1,404,253.14, but it is not shown what proportion of this represents loans made to members.

During the year 1919, the petitioner made loans on mortgage security in the total amount of $640,272.92, of which $354,590 or approximately 55.36 per cent represented loans made to members or stockholders and $285,782.92, or approximately 44.64 per cent represented loans made to nonmembers or nonstockholders. During the year it also made loans to members on stock, certificate, or pass-book security in the amount of $21,353. On December 31, 1919, there were outstanding loans in the amount of $1,743,831.55, but it is not shown what proportion of this amount represents loans made to members.

During the year 1920, the petitioner made loans on mortgage security in the amount of $490,293.47, of which amount $348,932, or

approximately 71.16 per cent, represented loans made to members or stockholders and $141,361.47, or approximately 28.84 per cent represented loans made to nonmembers or nonstockholders. Petitioner also made loans to members on stock, or pass-book security in the amount of $32,630.84. On December 31, 1920, there were outstanding loans in the amount of $1,827,141.77, of which amount $414,682.64, or approximately 22.69 per cent, represented loans made to members or stockholders and $1,412,459.13, or approximately 77.31 per cent, represented loans made to nonmembers or nonstockholders.

During the year 1921, the petitioner made loans on mortgage security in the amount of $130,765.71, of which $92,260, or approximately 70.55 per cent, represented loans to members or stockholders and $38,505.71, or approximately 29.45 per cent, represented loans made to nonmembers or nonstockholders. Petitioner also made loans to members on stock or pass-book security in the amount of $17,824. The outstanding loans as of December 31, 1921, were in the amount of $1,797,247.94, of which $404,707.93, or approximately 22.52 per cent, represented loans made to members or stockholders, and $1,392,540.01, or approximately 77.48 per cent, represented loans made to nonmembers or nonstockholders.

The stipulation entered into between the parties shows that during the year 1922, the petitioner made loans on mortgage security in the amount of $386,506.21, of which $384,067.20 represented loans to members and $3,439.01 represented loans to nonmembers. There is clearly an error in this statement, and assuming that the loans to nonmembers amounted to $2,439.01, we find that approximately 99.37 per cent of the loans was to members or stockholders, and about .63 of 1 per cent was to nonmembers or nonstockholders. The petitioner also made loans to members on stock or pass-book security in the amount of $22,148.40. The total loans outstanding on December 31, 1922, amounted to $1,873,833.96, of which $712,646.59, or approximately 37.92 per cent represented loans made to members or stockholders and $1,161,187.37, or approximately 62.08 per cent, represented loans to nonmembers or nonstockholders. Approximately 69 per cent of the income of the petitioner during the year was derived from loans to nonmembers or nonstockholders.

During the year 1923, all the loans made by petitioner were to members or stockholders. The amount of $21,880.33 was loaned to members on stock or pass-book security. The total loans outstanding as of December 31, 1923, amounted to $2,196,486.32, of which $1,323,995.53, or approximately 60.28 per cent, represented loans to members or stockholders, and $872,490.79, or approximately 39.72 per cent, represented loans to nonmembers or nonstockholders. During

the year approximately 50 per cent of the income of the petitioner was derived from loans to nonmembers or nonstockholders.

There were received, among other receipts, by the petitioner the following amounts from the sources and during the years indicated:

| Year | Deposits | Borrowed money | Deposits from other building and loan associations |
|---|---|---|---|
| 1918 | $571,848.73 | $10,000.00 | $10,000.00 |
| 1919 | 920,196.43 | | |
| 1920 | 936,904.23 | 39,000.00 | |
| 1921 | 648,626.05 | 15,000.00 | 5,000.00 |
| 1922 | 570,582.77 | 16,000.00 | 10,000.00 |
| 1923 | 624,112.83 | 70,000.00 | 10,000.00 |

No evidence was submitted to show whether these receipts were from members or from nonmembers of the petitioner.

The Revenue Act of 1916, which was in effect until February 24, 1919, the date of passage of the Revenue Act of 1918, provided:

SEC. 11 (a) That there shall not be taxed under this title any income received by any—

\*          \*          \*          \*          \*          \*          \*

Fourth. Domestic building and loan association and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

The Revenue Act of 1918 contains language almost identical with the above.

The Revenue Act of 1921 provides:

SEC. 231. That the following organizations shall be exempt from taxation under this title—

\*          \*          \*          \*          \*          \*          \*

(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; and cooperative banks without capital stock organized and operated for mutual purposes and without profit.

In *Johnstown Building & Loan Association*, 6 B. T. A. 463, we stated:

It thus appears that all the authorities agree that the distinguishing features characteristic of building and loan associations is the substantial mutuality of benefit or its reverse existing between all members of each association, and that Congress in all of the Acts of 1909 to 1921 has granted an exemption from income and profits taxation only to those associations organized for mutual benefit or mutual purposes; that all of the authorities above cited agree that some measure of departure like the borrowing of funds from nonmembers or the making of loans to nonmembers, when done merely as an incident to the general purpose of the organization, does not defeat the exemption.

In *Broadview Savings & Loan Co.*, 10 B. T. A., 725, we said:

But the mutuality peculiar to building and loan associations is not confined alone to the participation of the members in sharing profits and losses. Such mutuality pertains also to the members of an ordinary commercial partnership or association, and to the stockholders of an ordinary corporation engaged in a business enterprise for profit, the income of which is subject to tax. The mutuality essential to a building and loan association must include not only a mutuality of rights with respect to the control of the association, and a mutuality with respect to the assets of the association, but its primary design must be that of an instrumentality of mutual helpfulness among its members in saving and borrowing for home owning. *Lilly Building & Loan Company* v. *Miller*, 280 Fed. 143.

\*   \*   \*   \*   \*   \*   \*

The fact that a corporation calls itself a building and loan association, or that it operates as such under the laws of a state, is not determinative of its true character. If the mutuality requisite to a building and loan association is lacking, it is not entitled to exemption from federal income tax.

As pointed out in the cited cases, in order to be entitled to exemption from taxation the association must have operated upon a mutual basis. Just how far an association might go in making loans to and receiving deposits from nonmembers without losing its exemption it is difficult to determine.

We are of the opinion that during the years 1918, 1919, and 1920, the petitioner lacked the mutuality which is a requisite of a building and loan association and exemption is denied for those years.

With regard to the years 1921, 1922, and 1923, which are governed by the Revenue Act of 1921, we must determine whether the transactions of the petitioner for those years comes within the meaning of section 231 (4) of that Act, which requires that " substantially all of the business \* \* \* is confined to making loans to members " to be exempt.

During 1921, about 70.55 per cent of the loans made by the petitioner were to members or stockholders, and about 29.45 per cent were to nonmembers or nonstockholders. The source of the deposits and the borrowed money is not shown. We are of the opinion that during the year 1921, substantially all of the business of the petitioner was not confined to making loans to members and that the petitioner lacked the mutuality required for exemption from taxation.

During the year 1922, only about 0.63 of 1 per cent of the loans made by the petitioner were to nonmembers and during 1923, no loans were made to nonmembers. As pointed out hereinbefore, the petitioner, during the year 1922, received deposits in the amount of $570,582.77, borrowed money in the amount of $16,000, and received deposits from other building and loan associations in the amount of $10,000, and during the year 1923, received deposits in the amount

of $624,112.83, borrowed money in the amount of $70,000 and received deposits from other building and loan associations in the amount of $10,000.

In *Broadview Savings & Loan Co.*, *supra*, in denying exemption to the petitioner we stated:

The respondent denied the petitioner's claim for exemption, and determined the deficiency involved herein. The burden is, therefore, upon the petitioner to show that it comes within the classification of the exemption provided in the statute. As stated by the court in *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410—

" The plaintiff claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception."

In order to discharge the burden which it had assumed, the petitioner must establish (1) that, during the calendar year 1922, it was a domestic building and loan association within the meaning of the statute, and (2) that during said year substantially all of its business was confined to making loans to members.

\*    \*    \*    \*    \*    \*    \*

As stated in the *Lilley Building & Loan Co.*, *supra*, mutuality of ·interest between the stockholders on the one hand, and the depositors and borrowers on the other was lacking. Accordingly, the determinaiton of the respondent is approved.

From the constitution and by-laws of the petitioner we conclude that the petitioner was authorized to receive deposits from nonmembers, but no evidence was submitted to show whether the deposits in either of the years 1922 or 1923, or the money borrowed in those years were received from members or from nonmembers. We must, therefore, hold that the petitioner has not shown that it possessed, during those years, the mutuality which is an essential attribute of a building and loan association, or that substantially all its business was confined to making loans to members.

Reviewed by the Board.

*Judgment will be entered for the respondent.*