Doan Savings & Loan Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 10772.   Promulgated June 22, 1928.

*Herbert W. Nauts, Esq.,* and *Cleaveland R. Cross, Esq.,* for the petitioner.

*J. Arthur Adams, Esq.,* for the respondent.

OPINION.

TRAMMELL: The first issue for consideration is whether the petitioner was exempt from taxation for the years 1920 and 1921. The Revenue Act of 1918, in effect during the calendar year 1920, provides in section 231 (4) that "domestic building and loan associations" shall be exempt from taxation. The Revenue Act of 1921, which is controlling for that year, provides in the same numbered section that "domestic building and loan associations substantially all the business of which is confined to making loans to members" shall be exempt from taxation.

The petitioner claims exemption from all tax liability for said years under said Acts, which claim the respondent has denied. Unless the petitioner was a domestic building and loan association, as that term is used in the Act last mentioned, it will be unnecessary to determine whether during the year 1921 substantially all of its business was confined to making loans to members. Thus, the issue as to both years is resolved into a single preliminary question, namely, was the petitioner during 1920 and 1921 a domestic building and loan association within the meaning of said Acts?

Congress has exempted such associations from taxation without defining the term, or providing any rule by which to determine generally whether particular associations came within the exemption. We must assume, therefore, that the term was used in its commonly understood and generally accepted meaning, particularly in view of the fact that the authorities universally recognize that building and loan associations possess certain definite and peculiar characteristics.

An essential attribute of a building and loan association is mutuality, and hence its business must be confined substantially to its own members. *Eversman* v. *Schmitt*, 53 Ohio St. 174; 41 N. E. 139. But the mutuality essential to such an association must include not only a mutuality of right with respect to the control of the association and a mutuality with respect to the assets of the association, but its primary design must be that of an instrumentality of mutual helpfulness among its members in saving and borrowing for home owning. *Lilley Building & Loan Co.* v. *Miller*, 280 Fed. 143; affd. 285 Fed. 1020; *Broadview Savings & Loan Co.*, 10 B. T. A. 725.

It is generally recognized that one of the purposes of such an association is to make loans to its members to enable them to build or acquire property for their own occupancy or use. If a corporation does not substantially meet such generally recognized requirements, it is not such a building and loan association as is contemplated by the statute, regardless of what name it may have or how it may be designated or classified by the state statute under which it was organized.

On this point, the facts here show that during 1920, the petitioner made 50 loans, amounting to $349,450, one of which was made to a nonmember. Of the 49 loans made to members, according to the petitioner's evidence, 29 loans amounting to $233,850 were made for investment purposes, and, including the loan made to the nonstockholder constituted more than 68 per cent of the total loans made in that year. The testimony did not explain the purposes of the loans, except that they were for investment in buildings. This standing alone might be interpreted as meaning investments in property to be occupied by the borrowers, but when considered in connection with all the facts of record, we conclude that the buildings in which the investments were made were not to be used or occupied by the borrowers.

This view is supported by the fact that one stockholder obtained a loan of $24,000 for investment in a building to be leased to the Government for use as a post-office building. Three other stockholders obtained 16 separate loans for investment in as many different buildings. Also, other loans were made to building contractors. Not one of these borrowers owned more than one share of stock, having a par value of $100. One borrower secured 8 loans in 1920 of the total amount of $49,850 on 8 separate pieces of property; another secured 5 loans amounting in the aggregate to $65,000. The loans averaged from approximately $6,000 to $8,000 each, and of the total loans made by the petitioner in 1920, less than 32 per cent was made for the purpose of enabling its members to acquire homes or other property for their own occupancy.

The petitioner accepted savings deposits from the general public, upon which it paid interest at the rate of 5 per cent per annum, and, together with other funds, loaned this money to its members and others upon a repayment plan which netted the equivalent of interest at the rate of 7.98 per cent per annum. At the end of 1920 the petitioner had approximately 605 stockholders, 208 borrowers, and 1,124 depositors.

There was, during the year 1920, to a very material extent a lack of mutuality between the stockholders of the petitioner, on the one hand, and the borrowers and depositors, on the other.

During 1921, the petitioner made 50 loans amounting to $409,900, three of which were made to two borrowers who were not stockholders. Of the 50 loans, 12 were made to members and nonmembers for investment in business property, amounting to a total of $149,100, and 9 loans were made to members for investment in houses to be occupied as homes by others, amounting to a total of $52,400, or a total of 21 loans for investment purposes in the amount of $201,500. Less than 51 per cent of the 1921 loans were made to members for the purpose of enabling them to become owners of their own homes. At the end of 1921, the petitioner had approximately 650 stockholders, including borrowing and nonborrowing members, 192 borrowers and 1,082 depositors. What has been said above with reference to the lack of mutuality in 1920 applies in only slightly less degree to 1921.

From the record before us, it appears that during the two years involved, an average of more than 58 per cent of the petitioner's loans were commercial loans made for precisely the same purpose as loans made by commercial mortgage companies, whose incomes are subject to tax. The petitioner's loans referred to above were made for the sole purpose of earning profits for distribution among its stockholders, and not for the purpose of enabling its members to acquire property for their own use. And it further appears that its profits were derived in large part from the funds of savings depositors who were not members of the petitioner. The petitioner also owned real estate, from which it derived rents to the amount of $7,939.08 in 1920 and $10,769 in 1921.

As stated by the court in the *Lilley* case, *supra*, it is not thought that the making of loans to nonmembers, or borrowing from nonmembers or receiving deposits, so long as such transactions are simply incidental to the primary purpose of operating a mutual building association, would defeat the exemption, but here, upon a consideration of all facts, it is our opinion that there was a lack of the essential elements of a building and loan association as generally recognized.

The determination of the respondent on the first issue is, therefore, approved.

The conclusion reached above requires that we now consider the second issue, which relates to deductions of certain amounts claimed by the petitioner as interest, but which the respondent contends represents dividends on stock.

In its tax return for 1920, the petitioner deducted from income the total amount of $67,365.63 on account of interest paid during that year. This deduction included the amount of $41,493.95, which was in fact paid to the stockholders of the petitioner as dividends on paid-up and running stock. The petitioner also deducted in its 1921 return the amount of $66,924.34, which included $47,092.37 paid to its stockholders in that year as dividends on stock. While admitting that said amounts represent dividends paid in the respective years, the petitioner contends that the deductions should be allowed either as a business expense or as interest paid on borrowed money, because of the fact that all amounts paid in by the stockholders on paid-up or running stock could be withdrawn by them at any time.

This contention of the petitioner can not be sustained. Ordinarily, interest is compensation paid for the use of money borrowed, while dividends represent that part of the earnings paid to the stockholder on his investment which is risked in the enterprise. A creditor may subject to the payment of interest not only the earnings of a corporation but may proceed against the capital assets to satisfy a just demand, while a stockholder is entitled to dividends only if and when there are net earnings subject to distribution.

The petitioner's by-laws, which governed the matter of withdrawals, provided that, "All persons withdrawing shall be entitled to receive the amount of all credits at the time of the application to withdraw, less any member's share of the company's loss in excess of the reserve fund."

Under these circumstances, it is our opinion that amounts paid in by members of the petitioner on paid-up or running stock were subject to the hazards of the business up to the date of any application to withdraw, and dividends paid thereon are not allowable deductions as interest or business expenses.

The deficiencies herein, having been determined by the respondent on the basis of the allowance of the deductions mentioned, which he now alleges were erroneous, should be redetermined by adding to income for 1920 the amount of $41,493.95 and for the year 1921 the amount of $47,092.37.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRUSSELL and MILLIKEN dissent.