*76 OPINION.
Van Fossan :
The Board has recently had occasion in other cases to consider the primary question involved in the instant proceeding. *77 In those cases we have observed that when Congress provided that certain domestic building and loan associations should be exempt from tax it used the term in its ordinary and accepted meaning and that to qualify under this exception petitioner must establish a bona fide compliance with the intendment of the law. Among the well recognized attributes of a building and loan association is mutuality. This mutuality relates generally to the control and management of the business and its assets and in a larger and more fundamental sense to the opportunity and means it affords the members for saving and borrowing for home owning. Though isolated or infrequent exceptions .to this rule might not defeat a claim for exemption, we are of the opinion that such exceptions must not be so considerable in number or amount as to alter the true nature and character of the corporation’s business. Where a building and loan association does not substantially meet these requirements it is not such an association as is entitled to exemption under the statute, however it may style itself. The name is no safe criterion by which to judge the true character of the business. See Doan Savings & Loan Co., 12 B. T. A. 772; Broadview Savings & Loan Co., 10 B. T. A. 725; Eversman v. Schmitt, 53 Ohio St. 174; Lilley Building & Loan Co. v. Miller, 280 Fed. 143; aff'd. 285 Fed. 1020.
The stipulated record discloses that during the year 1923 the petitioner made 67 real estate mortgage loans to stockholders, aggregating $589,250, and that 42 of such loans, aggregating $436,550, or 74.09 per cent, were made to building contractors for the purpose of constructing one-family and two-family houses ,and four-family houses or apartments. Five additional loans, aggregating $31,750, or 5.38 per cent, were made for the purpose of constructing a store building (also containing apartments) and for purchasing vacant lots. Hence, during that year only 20 loans, aggregating $120,950, or 20.53 per cent, were made for the purpose of enabling the borrowers to build and purchase homes for their own use and occupancy.
On January 1, 1923, the mortgage loans of the petitioner were 125 in number and totaled $891,535.56. Of these loans twelve, aggregating $97,808.17, had been made to nonstockholders, while 108 thereof, aggregating $700,455.53, were in the names of persons who had attempted to qualify as members by subscribing to so-called “loan stock,” on which they had made a nominal payment, and, except in very few instances, had made no further payments during the life of their loans. By the end of 1923 the loans to “ loan stock ” subscribers had increased substantially in both number and amount, while the loans to nonstockholders had decreased by one in number and by over $16,000 in amount.
*78 It will also be observed that a large proportion of the petitioner’s revenue was derived from the deposits made by nonmembers, borrowed money, and other sources — activities of a kind apt to undermine and destroy the aims, purposes and reasons for existence of a true building and loan association.
In view of the facts as above stated and under the cases cited, we are clearly of the opinion that the petitioner is not entitled to exemption from taxation for the year 1923 under the provisions of section 231 (4) of the Revenue Act of 1921.
The second issue presented is whether or not the amounts paid by the petitioner as dividends on withdrawable stock should be allowed as deductions from gross income as either business expenses or interest on borrowed money.
It will be observed that the petitioner does not ask to be classified as a mutual savings bank under section 231 (2) of the said Act, but maintains that its so-called withdrawable stock, paid for either in full or in part, is not the capital stock of the corporation but is in the nature of deposits subject to withdrawal at the will of the depositor. Included in the classification of such stock payments or deposits as described by the petitioner are the payments made on the above-mentioned “ loan stock.”
Careful examination of the by-laws of the petitioner, quoted above, convinces us that the holders of the paid-up and running stock were in fact members of the association and as such entitled to all the rights and privileges of stockholders therein. From the provisions of the by-laws relating to the payment of dividends it is evident that dividends are to be paid out of the earnings of the association in proportion to the amounts paid by the stockholders or members on the installment and full paid capital stock of the association. The “ General Withdrawal Rule ” (section 26 of the petitioner’s by-laws) clearly distinguishes between the stock credits accruing to the members or stockholders and the interest payable to depositors. In the former class “ all persons withdrawing shall be entitled to receive the amount of all credits at the time of the application to withdraw, less any member's share of the Company's loss in excess of the reserve fund.” (Italics ours.)
As to these classes of stock the rule laid down in Doan Savings & Loan Co., supra, governs. As to the so-called loan stock, however, we are constrained to a different view.
It is our opinion that the makers of such applications were not bona fide stockholders of the petitioner either actually or potentially. They were under no obligation to make any payments subsequent to the initial one. The facts strongly indicate that the petitioner merely attempted to qualify its borrowers as members under the provisions *79 of section 231 (4) of the Revenue Act of 1921 and that there was no true intent on the part of either the petitioner or the borrowers themselves to establish them as actual participating members of the association. This conclusion is supported by the fact that even the small initial payments were frequently withdrawn and that only in rare instances were further payments made toward the acquisition o f the so-called stock. Therefore, Ave conclude that the $217.70 alleged to represent dividends on loan stock was in the nature of interest paid to the borrowers for the use of the money required to be deposited by them at the time their loans were granted. The facts as to this stock distinguish it from the case of Doan Savings & Loan Co., supra.

Judgment will be entered under Rule 50.