## ACKLIN v. PEOPLE'S SAV. ASS'N.

(District Court, N. D. Ohio, W. D. August 23, 1923.)

1. **Internal revenue ⊂⇒28—Member may sue to restrain association from making returns and paying taxes, though government not bound.**

   A member and stockholder of a building and loan association may maintain a suit to restrain the association from making returns of its income and capital stock, or paying taxes thereon, on the ground that it is exempt, though the determination might not be binding on the government; the petition being filed in plaintiff's own right and to assert a right of the association.

2. **Internal revenue ⊂⇒28—Injunction may lie when rights and property would be destroyed by payment of tax.**

   While the remedy of a taxpayer from whom an internal revenue tax is illegally exacted is in the Bureau of Internal Revenue, under Rev. St. § 3224 et seq. (Comp. St. § 5947 et seq.), and ordinarily he may not enjoin the collection of the tax, if the facts clearly show that the rights and property of the taxpayer will be utterly destroyed if he is compelled to pay an alleged tax and pursue his remedy in the department, a court of equity may take jurisdiction to grant relief, but only in the most extraordinary cases.

3. **Internal revenue ⊂⇒7—Exemption not denied because building and loan association requires ownership by borrowers of only small amount of stock; "members."**

   Under Revenue Act 1921, § 231 (4), exempting from payment of taxes on their capital stock and income building and loan associations, substantially all of whose business is confined to making loans to members, if an association operates on a strictly mutual basis, so that all members participate equitably and without particular benefit to any class, it may determine for itself what the qualifications of its "members" shall be, and need not require borrowing members to subscribe for stock equal to the loan, or for any particular amount of stock, and such an association cannot be denied exemption because it requires borrowers to own but $1 of stock, especially where this rule was adopted long before the Revenue Act was passed.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Member.]

4. **Statutes ⊂⇒217—When legislative discussions considered, in construing statutes, stated.**

   While the construction of a statute may not be generally aided by consideration of discussions in the Legislature, yet, where the legislation

was had with special attention given to the effect of the disputed language, that cogitation by participating members which served to affect the result may be resorted to for definitive purposes.

**5. Internal revenue ⬤⇒7—Commissioner not authorized to determine qualifications of members of exempt association.**

Under Revenue Act 1921, § 231 (4), exempting domestic building and loan associations, substantially all of whose business is confined to making loans to members, from taxation on their capital stock and income, no authority is conferred on the Commissioner of Internal Revenue to determine the qualifications of members.

**6. Building and loan associations ⬤⇒1—Nature and object stated.**

Mutuality is the essential principle of a building and loan association, the object of which is to provide the means by which any person can join with others in loaning money and obtain substantially all of the benefits of the transaction, subject only to a minimum expense of operation, and whereby one can borrow money from the association at the lowest practical charges, subject only to unavoidable charges for operation.

**7. Internal revenue ⬤⇒7—Exemption not denied building and loan association because loss in case of failure would not fall equally.**

Under Revenue Act 1921, § 231 (4), exempting building and loan associations, substantially all of whose business is confined to making loans to members from taxation on their capital stock and income, exemption cannot be denied because, in the remote event of an association's failure, the loss after absorption of reserves would not fall on borrowers and lenders according to stock owned by lenders and stock subscribed for by borrowers.

**8. Internal revenue ⬤⇒28—Filing of returns by exempt association not enjoined, or other relief granted, unless departmental relief delayed.**

That a building and loan association, exempt from taxation on its income, may be injured or prejudiced by the uncertainty of the situation, is not sufficient ground for enjoining it, in suit by member and stockholder, from filing income tax returns, or otherwise interfering by injunction, until it has failed within reasonable time to obtain relief in the Treasury Department, under Rev. St. § 3224 et seq. (Comp. St. § 5947 et seq.).

In Equity. Suit by one Acklin against the People's Savings Association. On motions to dismiss, and for a restraining order. Both motions denied.

E. H. Ray, of Toledo, Ohio, for plaintiff.

Marshall & Fraser, of Toledo, Ohio, for defendant.

KILLITS, District Judge. This suit was brought by a member and stockholder of the People's Savings Association to restrain the defendant from (a) filing income tax or capital stock tax returns; (b) from paying any alleged taxes; and (c) from dismissing a suit now pending wherein the association is plaintiff and the collector of internal revenue is defendant, in which the association asks an injunction restraining infringements of its alleged right of exemption. The plaintiff prays for a temporary restraining order, while the defendant moves to dismiss.

The bill alleges, in substance: That the People's Savings Association is a building and loan association organized and doing business under the laws of Ohio, and has been such for about 40 years; that it conducts its business on a strictly mutual basis and confines its busi-

ness to making loans to members; that the association has something like 15,000 members, and that, if it should, voluntarily or under duress, pay out a substantial amount of money as for taxes, a proper distribution of earnings among its members cannot be made, even if it shall thereafter be held that the taxes were illegally assessed; that the association proposes to follow the statutory remedy provided by section 3224 et seq., Revised Statutes (Comp. St. 5947 et seq.) intending to pay capital stock taxes, to file returns of income taxes, if necessary, to pay income taxes, and to proceed for the protection of its rights by filing claims for refund and by suit for recovery, and it is alleged that, if the association follows this course, an irreparable injury will be suffered by the association and its members, because of the delays which will inevitably ensue; that, upon the facts alleged, the remedy provided by section 3224 et seq. is utterly inadequate in the circumstances of this case, and that the plaintiff and the association have no remedy, save and except in a court of equity; that the association is exempt from taxation, and that the acts of the tax authorities in holding it subject to taxation, and in demanding payment of alleged taxes and filing of tax returns, are without color, appearance, or a semblance of authority; that, some time ago, in response to demands from the collector of internal revenue for the payment of capital stock taxes, and for the filing of income tax returns, the association filed in this court a suit against the collector to enjoin the enforcement of his demands, and that such suit is now pending herein on the motion of the defendant to dismiss, and on the motion of the plaintiff association for leave to amend, and that the association now proposes to dismiss this suit, and to proceed under section 3224 et seq., Revised Statutes.

[1] The right of the plaintiff in this case to maintain this suit against the association, notwithstanding the determination may not be binding upon the government, seems clear upon the authorities, especially because of the exemption plaintiff and other members are entitled to if their association is so conducted as to be entitled to such consideration. Brushaber v. Union Pacific Railroad Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; Smith v. Kansas City Title Co., 255 U. S. 180, 41 Sup. Ct. 243, 65 L. Ed. 577. The plaintiff's petition is therefore filed in his own right and to assert a right of the association.

[2] While it is a settled practice, by decision of the Supreme Court in the Dupont and other cases, that the remedy of a taxpayer is in the Bureau of Internal Revenue under section 3224 et seq., Revised Statutes, and that ordinarily he may not enjoin the collection of a tax, but must pay the tax and seek a refund in the department, nevertheless the existence of exceptional cases is recognized. Dodge v. Osborn, 240 U. S. 118, 36 Sup. Ct. 275, 60 L. Ed. 557; Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. 822. It is easily conceivable that there are and must be cases in which the rights and property of a taxpayer will be utterly destroyed, if he is compelled to pay an alleged tax and pursue his remedy in the department, wherefore, when the facts clearly show that the pursuit of the ordinary statutory remedy will inev-

itably result in such destruction, a court of equity may take jurisdiction to grant relief and to furnish an adequate remedy. This, of course, should be done only in the most extraordinary cases, for the collection of revenue necessary to the support and maintenance of the government ought not be interrupted by litigation, unless exceptional and grave conditions obtain.

[3] Two questions for us are raised by the several motions: (1) Is the People's Savings Association exempt from taxation under the Revenue Act of 1921? (2) Has the plaintiff or the Association an adequate remedy at law? Considering them, we have difficulty in finding a reason underlying the refusal of the Commissioner of Internal Revenue to recognize the exemption of the People's Savings Association. The Revenue Act of 1921 provides for the exemption of "domestic building and loan associations, substantially all the business of which is confined to making loans to members." 42 Stat. 253, § 231 (4). Upon the allegations of the bill, it appears that the association is a domestic building and loan association, that it is strictly mutual in all its operations, and that it is operated for the benefit of all its members, and not for the benefit of a few, or for any group. Its business is confined to making loans to members; that is to say, loans are made only to persons who qualify as members in accordance with the constitution and by-laws, which provide that a person may become a member of the association for the purpose of making a loan by subscribing for $1 of loan stock. The association has required the subscription of $1 of loan stock and no more as the qualification of membership since 1895, wherefore it is apparent that this basis of qualification was not set up as a subterfuge, or for the purpose of evading the incidence of the Revenue Act of 1921.

The petition shows that mutuality is accomplished as fully by requiring the subscription of $1 of loan stock as if more were required. Regarding the practice of the association, as alleged, to make monthly credits on loans, it would not seem to make much difference in the result whether the borrower subscribes for $1 of stock or for an amount equal to the face of his loan, because each month the amount of his payments are credited on his loan and in that way he gets his share of the benefits of the association. It appears from the petition and from official communications of the Treasury Department, exhibited in connection with the presentation of the motions now before the court, however, that the issue between the Commissioner of Internal Revenue, on the one hand, and the People's Savings Association, on the other hand, is on this very question, whether or not a person becomes a bona fide member of the association by subscribing for $1 of loan stock. In a letter written by the collector of internal revenue to the defendant association, under date of June 11th, the collector quotes the following from the Treasury Department:

"In order to constitute a borrower, a bona fide member within the meaning of the law, he must have a substantial interest in the profits and burdens of the association. The evidence furnished in this case clearly indicates a policy to require subscription to only a nominal amount of stock by persons borrowing funds. It is therefore apparent that the association does not come within the language of the law defining a domestic building and loan associa-

tion as one substantially all the business of which is confined to making loans to members."

There was also submitted to us an opinion by the Solicitor of the Internal Revenue as follows:

"Deputy Commissioner Chatterton: Receipt is acknowledged of your memorandum of March 20th, transmitting to this office the case of the People's Savings Association, Toledo, Ohio, for advice as to the taxable status of this organization. Attorneys for the taxpayer have been fully heard. It appears that the association in question issues only installment stock at the present time. This is of two classes: (a) Running deposit stock, on which payments are not paid periodically but are made at the convenience of the purchaser; (b) running weekly payment stock, on which a definite amount is paid each week. On January 31, 1922, there was outstanding installment stock on which there had been paid $5,091,229.11. On the same date there were outstanding loans of $4,896,915.59. It has been the long-established practice of the association to loan to persons who have purchased but one share of loan stock in order to qualify as a member of the association. A great many of these loans are made to persons who are purchasing stock in the association, but the repayment of the loan bears no relation whatsoever to the purchase of stock. The association now receives no deposits from persons who do not become stockholders, though the balance sheet shows about $14,000 in deposits prior to 1921, a very inconsequential sum as compared with total receipts. In law opinion 1114 it was held that where a building and loan association obtains its funds by the sale of stock, the matter of loans to nonmembers is not vital under the 1918 act. (40 Stat. 1057). Therefore, whether the holders of one share of loan stock be regarded as bona fide members or not in this case, it appears that the association is entitled to exemption under the above ruling.

"It is next necessary to consider this case in the light of the provisions of section 231 (4) of the Revenue Act of 1921, which exempts 'domestic building and loan associations, substantially all the business of which is confined to making loans to members. * * *' This association insists that all of its loans are to 'members,' and that it is therefore within the statute. As has already been stated, it has long been the practice of this organization to require borrowers to take only one share of loan stock, irrespective of the amount of the loan. The repayment of the loan has no relation whatsoever to the purchase of this stock. Admitting the good faith of the organization in this case in using this plan, the bureau cannot concede that the ownership of one share of stock qualifies a person as a borrowing member within the meaning of the above quoted statute. If this be admitted, the decision won by the Bureau in Lilley Building & Loan Co. v. Miller (D. C.) 280 Fed. 143, goes for naught, for every building and loan association which is carrying on virtually a banking business may immediately qualify under the statute by requiring its depositors and borrowers to buy a share or a fraction of a share of stock, which has no relation to their deposit or their borrowing. It is not believed that such procedure can be regarded as a compliance with the intent of the statute.   L. O. 1114, not published.

"The association has also furnished elaborate evidence to show that about 62 per cent. of its loans are made to persons who are purchasing installment stock. Even if it were admitted that the loan, which bears no relation whatsoever to their stock purchases, is a loan to members within the meaning of the statute, the percentage shown is not sufficient to bring the organization within the meaning of the language, 'substantially all the business of which is confined to making loans to members.' It is held, therefore, that this organization is not exempt under the Revenue Act of 1921."

Thus it is apparent that the issue between the Treasury Department and the association goes only to the amount of stock which must be subscribed by a borrower to qualify him as a member. Concretely, then, the question is whether a borrower with a stockholding interest

of but $1 is a "member," within the meaning of the word "members," as used in the exemption clause of the Revenue Act of 1921, quoted in the opinion of the Solicitor above.

[4] It is apparent, because of the attitude of the Treasury Department that this word, as Congress used it, needs definition, for it is not allowed to have its categorical significance. While, generally speaking, construction of a statute may not be aided by consideration of discussions in the Legislature, yet, where it is seen that the legislation was had with special attention given to the effect of the disputed language, that cogitation by participating members which served to affect the result may be resorted to for definitive purposes. Such is the rule where obscurity in a statute is to be cleared. Johnson v. Southern Pacific Co., 196 U. S. 1, 20, 25 Sup. Ct. 158, 49 L. Ed. 363; Lincoln v. United States, 202 U. S. 484, 26 Sup. Ct. 728, 50 L. Ed. 1117; Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.

It appears that, when the act in question was before the Senate, a committee amendment was proposed which, by adding, in the clause in question and after the word "members," and as a definitive qualification of that word, this language, "on the basis of their stockholdings." This change in the bill, as it came from the House, would have settled the question before us by giving to the statute the operation contended for it by the department, but (Congressional Record, vol. 61, pp. 7649–7653) the amendment was not adopted, for the reason that it was not intended to legislate to produce such a result. Senator Willis, of Ohio, made the point clear to the Senate, saying, among other things:

"There are two very serious objections to that [the committee amendment]. The first is that it will again throw the whole matter into litigation, because I do not think anybody can tell what the phrase 'loans to members on the basis of their stockholdings' means. Does it mean, if one man owns a $1 share and another owns a $5 share, that loans must be proportionate, or what does it mean? Inasmuch as the question has been threshed out, and inasmuch as the financial situation in Ohio, as elsewhere, is exceedingly delicate, as Senators must know, I suggest that it would be exceedingly unwise at this time to undertake to change a situation which is fraught with the very gravest dangers."

The act of 1921 granted exemption to building and loan associations, the business of which is confined to making loans to members, but it does not specify the qualifications of members. It must be, therefore, that such an association has the right to determine for itself what the qualifications of its members shall be. If it operates on a strictly mutual basis, and it cannot be a true building and loan association unless it does so operate, it may qualify its members in any reasonable way acceptable to it. We are clear that the qualification in this case is reasonable, especially having consideration to the practical working out of the qualification.

[5, 6] We must hold, therefore, that the Commissioner of Internal Revenue cannot deny exemption to a true building and loan association simply because it does not require each borrowing member to subscribe for an amount of stock equal to the face of his loan. Neither is there anything in the act conferring authority on the Commissioner to deter-

mine the qualifications of members, nor does the language of the act imply such a qualification. The Commissioner of Internal Revenue would be justified in denying exemption to a so-called building and loan association which was not operating on a strictly mutual basis, because such an association would not be a true building and loan association. It might call itself a building and loan association, and it might be operating under the building and loan association law of some state; but it would not be such within the meaning of the Revenue Act of 1921. Mutuality is the essential principle of a building and loan association. The object is to raise money to be loaned to members. The qualification of membership is a mere incident, and is not important, if undiscriminating and definite, if mutuality is present. The object of the true building and loan association is to provide the means by which any person can join with others in loaning money, and obtain substantially all of the benefits of the transaction subject only to a minimum expense of operation, and whereby one can borrow money from the association at the lowest practical charges, subject only to unavoidable charges for operation. The borrower and the lender are thus brought together, and each benefits from his association with the other, and each obtains the maximum of benefits with a minimum of expense.

Considering the terms of the act and the history of the legislation as just referred to, the function of a modern building and loan association, and the structure and operations of building and loan associations doing business at the time the law was enacted, no room exists for the claim that the borrowing members must qualify by subscribing to any particular amount of stock. It must be that Congress had in mind that true building and loan associations operated for mutual purposes, and that any association which maintains the requisite mutuality is entitled to exemption, entirely without regard to the amount of stock subscribed by its borrowing members. This conclusion is so clear, considering all that is before us, that there seems to be no color of right to the denial of the exemption in the case before the court.

[7] We see little force in the point that the borrower must assume his share, whatever that may mean, of the burdens or risks or losses. The laws of Ohio require reserves which appear to be adequate to protect all members against loss and to enable or require the distribution of all other earnings. Congress certainly did not intend to deny exemption to an association simply because, in the remote event of its failure, the loss, after absorption of reserves, would not fall on borrowers and lenders according to stock owned by lenders and stock subscribed for by borrowers. If there were anything to indicate lack of mutuality in the operations of this association, its claim of exemption might be rejected on that ground. If, for instance, it received special deposits of money, or if its structure were such that borrowing members and lending members did not participate in earnings on a fairly equal basis, the exemption might be denied on the ground that, while the association was a building association in name, it was nevertheless operating as something else.

We see no conflict between our conclusions in the instant case and the decision in Lilley Building & Loan Co. v. Miller (D. C.) 280 Fed.

143. Of course an association cannot carry on a banking business and operate on a mutual basis, which is the controlling criterion of a building and loan association. Until Congress shall furnish a standard or definition, it must be held that a building and loan association, which confines its business to making loans to members, and does not attempt a banking business, and operates on a strictly mutual basis, so that all its members participate equitably, and without particular benefit to any class, is exempt, and that the real test is mutuality, and that no other test can be injected or substituted. In view of the foregoing, the court must hold that the People's Savings Association is exempt from taxation, and that the demands made upon it are illegal, and without color or authority of law.

[8] Coming, now, to the second question, as to the remedy, it would seem that, whatever view this court may entertain as to propriety of the denial of exemption, the situation is not so extraordinary as to qualify the court to interfere with the administration of the revenue laws of the United States. It appears from the petition that the association, without prejudice to itself or its members, can pay the small amount involved in the payment of the capital stock tax, and that, in respect of such amount, it can pursue the remedies prescribed by section 3224 et seq., of the Revised Statutes, without serious injury, unless the decision in the Treasury Department shall be unduly delayed. But it is alleged, with persuasive basis, in fact, that if the association is required to pay the large amounts involved in the payment of income taxes, it and its members will be seriously prejudiced, and that it will be unable thereafter to make a fair and equitable distribution among members. It is not apparent, however, from the petition, how the association can be prejudiced by filing income tax returns, as the injury to it will only occur, should it make payment under protest. Of course the association may be injured or prejudiced by the uncertainty of the situation, and it is entitled to a prompt determination of its rights, in order that it may go forward with its business; but, until it has failed to obtain relief in the department within a reasonable time, it is not felt that this court should interfere.

If it shall thereafter appear that, notwithstanding all the facts alleged in the petition, and notwithstanding the efforts of the association to obtain a prompt determination of its rights, either there has been undue delay, or it has been denied its exemption, it may be that then and in such circumstances the court should interfere.

The motion to be dismissed must be denied, for the reason that the petition states a good cause of action. The motion for a restraining order should be denied for the present, for the reason that the plaintiff has failed to show that imminent danger which should appear before a court of equity is competent to interfere. The matter of restraining the payment of income taxes may be deferred to the hearing on the merits. The defendant should answer. The plaintiff may renew his motion upon a proper showing, either of failure of timely relief from the Treasury Department or of imminent danger or of irreparable injury.