THE TEXAS COMPANY (PUERTO RICO), INC., Petitioner and Appellee, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 6851. Argued May 27, 1936.—Decided July 24, 1936.

*B. Fernández García, Attorney General (Benjamin J. Horton* on the brief) and *R. Cordovés Arana, Assistant Attorney General,* for appellant. *R. Castro Fernández* and *José López Baralt* for appellee.

Mr. Justice Travieso delivered the opinion of the Court.

Petitioner, The Texas Company (Puerto Rico) Inc., a corporation engaged in the purchase, sale, import and export of gasoline, filed a petition for an injunction against the Treasurer of Puerto Rico, alleging as essential facts the following:

1.—That from an investigation practiced by the Treasurer of Puerto Rico, with the object of determining the stock of gasoline of the petitioner on July 24, 1931, on which date Act No. 40 of 1931 (p. 360) which fixes a tax of seven cents on each gallon of gasoline became effective it appeared that through an unintentional error the petitioner set forth 21,398 gallons of gasoline as *exported* when in fact they had been *sold* locally before the new Act of 1931 became effective and while Act No. 12 of 1930 (p. 158), which levied a tax of six cents per gallon, was in force.

2.—That the auditors of the Government erroneously raised the amount to 24,491 gallons, for which reason the Treasurer assessed and collected from the petitioner the sum of $1,469.46 instead of the $1,283.88 to which the tax of six cents on the 21,398 gallons erroneously reported, would amount.

3.—That the petitioner did not include in its inventory of July 24, 1931, 155,827.52 gallons that on said date were on the high seas, and were received in San Juan one or two days after Act No. 40 of 1931 became effective, for which reason the Treasurer assessed the tax of seven cents per gallon or a total of $10,907.93.

4.—That on January 25, 1934, when the investigation of the auditors ended, the Treasurer demanded from the petitioner payment of the two items of $1,469.46 and $10,907.93, plus $545.39 as surcharges at the rate of 5% and $3,199.66 as interest at the rate of 1% per month until January 24, 1934; that on February 8, 1934, the petitioner delivered to the Treasurer a certified check for $1,283.88 in payment of the tax of six cents per gallon on the 21,398 unreported gallons and another cer-

tified check for $10,907.89 in payment of the tax of seven cents per gallon on 155,827 gallons; and that on February 12, 1934, the petitioner delivered to the Treasurer another certified check for $193.42 to cover the tax on the difference in the number of gallons fixed by one and the other party, thus paying the total amount of the taxes due.

5.—That the three checks for a total of $12,385.19 were collected by the Treasurer and that hence the petitioner owes no amount as tax on the gasoline; and that on receipt of said checks, the Treasurer delivered to the petitioner a similar amount in internal revenue stamps, and the same were affixed to the corresponding invoices, but the Treasurer refused to cancel the said stamps because the petitioner had failed to pay the interest and penalties claimed by the defendant Treasurer.

6.—That on February 8, 1934, the Treasurer attached 162,868 gallons of gasoline as well as all the gasoline existing in the tanks of the petitioner in San Juan, to recover the same taxes already paid, plus the surcharges, interest, administrative fines and costs of the attachment, for a total sum of $16,287.84. As a second cause of action it is alleged:

7.—That on January 19, 1934 the petitioner imported 1,243,705 gallons of gasoline, on which the Treasurer assessed a tax of seven cents per gallon, which was paid, with the exception of the sum of $19,349.88 retained by the petitioner as compensation for an identical amount that the Treasurer should have returned to the petitioner as taxes paid by the latter on several items of gasoline exported from Puerto Rico; that the Treasurer refused to approve the compensation and on Saturday February 3, 1934, he returned to the petitioner its checks for $16,647.26; that on February 6, 1934, the first working day after the third of the month, as the banks were closed Monday the 5th, the petitioner delivered to the Treasurer a certified check for $19,349.88, which was accepted and collected. That on receipt of said check the Treasurer delivered to the petitioner internal revenue stamps for the amount of the check and cut said stamps into equal halves, affixing and cancelling one half to the original invoices and the other half on the invoice book of the petitioner; and that after cancelling said stamps the Treasurer returned to the petitioner the original invoices, alleging that he could not accept them as the sums of $967.50 as surcharges and $90.30 as interest had not been paid.

8.—That in spite of the payments made by the petitioner, on February 10, 1934 the defendant Treasurer attached several properties of the petitioner to recover the sum of $19,349.88, which the petitioner alleges it had already paid, plus surcharges, interest and costs, or a total of $20,408.18.

The petitioner alleges furthermore, that as the Treasurer refused to receive the five original invoices whereon half of the stamps cancelled are affixed, the petitioner deposited said invoices in the office of the Clerk of the District Court, at the disposal of the defendant.

The Treasurer notified the petitioner that if within ten days following that of the notice it failed to pay the amounts claimed, the defendant would sell at public auction the properties attached.

As a question of law it is alleged in the petition that the attachment levied by the Treasurer is null and void for the following reasons:

A.—Because an attempt is made to recover taxes already paid in their entirety.

B.—Because Act No. 40 of 1931 does not authorize the Treasurer to make a summary attachment for the recovery of taxes on gasoline and much less for surcharges, interest, fines and costs.

C.—Because neither Act No. 12 of 1930, which amended the original Act No. 52 of 1925, (p. 296) nor the latter, authorize the Treasurer to make a summary attachment. Under Section 5 of the original act, the Treasurer may only attach the gasoline on which the tax is due, and this he failed to do in the present case, for the gasoline on which the tax was levied was sold before July 24, 1931.

D.—Because the incorporation by reference made by Section 6 of Act No. 52 of 1925 (p. 296), of the provisions of titles 1, 3, 4, 7, 8, 9 and 10 of the Excise Tax Law (No. 68) of July 28, 1923 ( (1) p. 442) as amended, and the provisions of Act No. 40 of 1931 (p. 360) which authorize the Treasurer to collect the tax subject to the provisions of the Internal Revenue Law, are unlawful, null and unconstitutional as they are in open violation of Section 34 of the Organic Act of Puerto Rico.

E.—Because none of the laws levying taxes on gasoline authorizes the imposition of surcharges, interest, fines and penalties; and because even though the provisions of the Excise Tax Law

might be incorporated by reference to Acts Nos. 52 of 1925 and 40 of 1931, the Excise Tax Law effective in July 1931, did not authorize such assessment, the same not having been authorized until August 6, 1931, on which date the Excise Tax Law, No. 83 of 1931 (p. 504) became effective, the assessments included under the first cause of action being consequently illegal.

F.—Because if the defendant Treasurer were allowed to sell the attached property, which is worth more than twice the value of the amount claimed, the Treasurer would then collect twice the tax claimed by him, thus depriving the petitioner of its property without due process of law.

It is finally alleged, that the property attached is needed by the petitioner to continue its business and to keep its contracts with other persons; that the sale at public auction would bring about a multiplicity of suits against the petitioner and that the same would suffer irreparable damages; that the petitioner has no rapid and adequate remedy at law to prevent the defendant from carrying out the threatened acts; that Act No. 8 of 1927 (p. 122), as to payment of taxes under protest, is applicable solely to a taxpayer who thinks that he should not pay a tax, but not to the one who pays it, and that said act does not compel one to pay under protest for a second time the tax assessed on the taxpayer; that the aforesaid act does not provide payment under protest of the surcharges, interest and penalties and that if the petitioner paid the same it would not be in a position to recover the same following the procedure fixed by said act, nor by any other; and that even if the Treasurer were entitled to collect the amount claimed, he would only be entitled to do so through an ordinary suit.

The petitioner prayed that a permanent writ of injunction issue commanding the Treasurer to refrain from collecting the amounts in controversy herein and from selling at public auction the property attached and that during the pendency of the suit a preliminary injunction to the same effect be issued.

An order to show cause why the writ of injunction prayed for should not lie having been issued, the District Court, after hearing the defendant in opposition to the petition, issued the preliminary injunction after the giving of a bond

for $2,000. It is from that order that the defendant has taken the present appeal.

The assignment of errors contained in appellant's brief filed before this Supreme Court, sets forth nine errors alleged to have been committed by the court below in issuing the writ of injunction against the Treasurer of Puerto Rico. The said nine errors may be condensed as follows:

1.—The District Court erred in holding that the Treasurer had no authority to assess and collect interest, surcharges, penalties, administrative fines and costs and much less to collect the same through the summary administrative procedure of attachment and sale of the property at public auction.

2.—The District Court erred in assuming jurisdiction and in issuing the writ of injunction.

3.—The District Court erred in holding that the petitioner was entitled to the compensation of the sum of $19,349.88 that The People of Puerto Rico was owing to the petitioner as tax collected on gasoline that had been exported.

We shall discuss the above three errors in the same order in which they have been stated.

 The controversy between the parties refers by no means to the legality or illegality of the assessments made by the Treasurer of the petitioner, as tax on the gasoline imported or sold in Puerto Rico. It appears from the record that the petitioner has paid or offered to pay to the Treasurer all the amounts demanded by said officer, as taxes on various items of gasoline, but that it refused to pay the amounts claimed by the Treasurer as surcharges, interest, administrative fines and costs levied as penalties for having failed to pay the taxes in due time, and alleging that the Treasurer is not authorized by any law to demand such payments or to fix such penalties.

In order to decide the legal questions raised, it will be convenient to make a brief history of our legislation on gasoline tax. Originally, the tax on gasoline was contained within the provisions of the Excise Tax Law. Act No. 68

of July 28, 1923, entitled "Excise Tax Law of Puerto Rico" Laws of 1923, p. 442, provided:

"Section 20.—That there shall be levied, collected and paid, for one time only, as an internal-revenue tax on each of the following articles:

" . . . . . . . . . . .

"37.—*Gasoline.*—On all gasoline manufactured, produced, sold or consumed in Puerto Rico a tax of half a cent (½ of 1 c.) per gallon."

The only penal clause appearing in said act is contained in Section 38 thereof which provides that every person who fails to pay the taxes therein prescribed shall be guilty of misdemeanor, and the merchandise on which said tax has not been paid may be attached and sold at public auction to indemnify The People of Puerto Rico for the sums defrauded by the violator. Section 88 of the same act authorizes the Treasurer to impose and collect, through administrative proceedings, a fine not to exceed $25 for each violation, provided that if the fine is not paid the Treasurer may institute proceedings in the proper court for violation of the provisions of the law. We have been unable to find any provision in said act authorizing the Treasurer to assess and collect surcharges, interest or costs, or to collect the same or the fines through the attachment and sale of property.

On July 21, 1925, the legislature approved Act No. 52 (Laws of 1925, p. 296) which repealed paragraph 37 of the Excise Tax Law of 1923 *supra,* and authorized the levy of a tax of 2 cents on each gallon of gasoline sold for consumption in Puerto Rico, and the creation of a fund for the asphalting of insular roads. Section 5 of said act provides that any person failing to pay the tax shall be guilty of misdemeanor, and authorizes the Treasurer *to seize and sell at public auction any gasoline on which the tax has not been paid,* to answer for the amounts defrauded from the Treasury.

Act No. 8 of May 11, 1927 (Laws, p. 420) amended Section 1 of Act No. 52 of 1925, with the object of raising the

tax to 4 cents per gallon; and Act No. 12 of April 21, 1930, (Laws, p. 158) again amended said Section, as follows:

"Section 1.—That there shall be levied, collected and paid as an internal-revenue tax, once only, the sum of six (6) cents for each gallon of gasoline sold or consumed in Puerto Rico; *Provided,* That this tax shall have the character of an internal-revenue tax, and, therefore, shall be uniform and general, both on the article produced in foreign countries and brought to Puerto Rico as well as on the article manufactured or produced in this Island, and such tax shall be collected by the Treasurer of Puerto Rico by affixing and cancelling internal-revenue stamps on such documents as may be prescribed by him for the purpose."

This last amendment became effective July 1, 1930.

On April 24, 1931, Act No. 40 (Laws, p. 360) was approved, repealing Act No. 12 of 1930, and providing:

"Section 1.—By this Act there shall be levied, collected, and paid, as an internal-revenue tax, once only, the sum of seven (7) cents for each gallon of gasoline imported, manufactured, sold, or consumed, or otherwise disposed of for consumption, in Puerto Rico; and such tax shall be collected by the Treasurer of Puerto Rico by the attaching and cancelling of internal-revenue stamps prescribed by him for the purpose; *Provided,* That the federal employees of the Custom House may co-operate with the Treasurer of Puerto Rico in the collection of said tax; *Provided, further,* That this tax shall have the character of an internal-revenue tax, and therefore, shall be uniform and general, both on the article produced in foreign countries and brought to Puerto Rico as well as on the article manufactured or produced in this Island, and such tax shall be collected by the Treasurer of Puerto Rico, subject to the provisions of the Internal-Revenue Law, as soon as the gasoline is manufactured or produced in, or introduced into Puerto Rico, by affixing and cancelling internal-revenue stamps on such documents as the Treasurer may prescribe for the purpose."

This act, in accordance with the Treasury rules, became effective July 24, 1931.

In none of the laws that we have cited is there any legal provision expressly authorizing the Treasurer of Puerto Rico

to demand and collect, through the summary proceeding or restraint, attachment and sale at public auction, or in any other manner, surcharges, interest, fines and costs on the amounts that an importer or seller of gasoline may have failed to pay within the term fixed by the law or rules. The appellant Treasurer maintains, however, that he is legally authorized to summarily levy and collect all those penalties from taxpayers in default, and cites in support of his authority Section 1 of Act No. 40, *supra,* which provides that the gasoline tax *shall have the character of an internal revenue tax and shall be collected by the Treasurer of Puerto Rico subject to the provisions of the Internal Revenue laws.* The act to which reference is made in the above Section 1 of Act 40 of 1931, is Act No. 85 of August 20, 1925 (p. 584) and the sections of said act attempted to be incorporated to Act No. 40, *supra,* through the above reference, read:

"Section 75.—The Treasurer of Puerto Rico is hereby authorized to impose and collect, through administrative proceedings, from any person who fails to observe any of said regulations and in cases of misdemeanor under this Act, a fine which shall not exceed twenty-five (25) dollars for each offense, or he may, in his discretion, enter a complaint against said person before the proper court for failure to comply with the regulations or for committing a violation of the law.

"When the Treasurer of Puerto Rico imposes an administrative fine in accordance with the preceding provision, and the payment thereof is not made, said official may institute distraint proceedings in order to make said fine effective.

" . . . . . . . . .

"Section 105.—When any person bound by this Act to make payment of taxes levied hereunder, fails to do so within the time fixed therefor, the Treasurer of Puerto Rico or his duly authorized agents are empowered to attach and sell property of the debtor at public auction, pursuant to the procedure established in the Political Code to enforce payment of property taxes levied and unpaid, granting to the debtor the right of redemption on the same terms and to the same extent as provided by said Code."

The Treasurer admits that the acts that we have cited did not authorize him to levy and collect penalties and interest from the petitioner because the latter failed to pay in due course the tax on the gasoline imported by it two days after July 24, 1931, when Act No. 40 of the same year became effective; but insists that Section 105 of the Internal Revenue Law, *supra,* which became effective October 1, 1925, authorizes the Treasurer to collect the tax following the same proceeding established by Sections 335–352 of the Political Code to make effective taxes on property.

The appellant repeats his argument that prior to January 19, 1934, on which date the petitioner imported 1,243,705 gallons of gasoline, on which it should pay $87,059.35 as a tax of 7 cents per gallon, Act No. 40 of 1931 had already been suspended by Act No. 15 of August 24, 1933 ((2) p. 80), which became effective on the same day, and which contains the following provisions:

"Section 1.—An internal-revenue tax of seven (7) cents is hereby levied, and shall be collected and paid, once only, on each gallon of gasoline introduced into, or manufactured, sold or consumed, or otherwise disposed of for consumption in, Puerto Rico; and said tax shall be collected by the Treasurer of Puerto Rico by affixing and cancelling such internal-revenue stamps as he may prescribe for said purpose; *Provided,* That this tax shall have the same character as internal revenue taxes, and, therefore, shall be applied in a uniform and general manner to the gasoline produced in foreign countries and brought into Puerto Rico as well as to the gasoline produced in the Island, and said tax shall be collected by the Treasurer of Puerto Rico subject to the provisions of the Internal Revenue Act, as soon as the gasoline is manufactured or produced in, or introduced into, Puerto Rico, by affixing and cancelling internal-revenue stamps on such documents as the Treasurer may determine for said purpose; ...

" . . . . . . . . . .

"Section 6.—All laws or parts of laws in conflict herewith are hereby repealed, except the provisions of Act No. 40, approved April 24, 1931, as well as the provisions of Joint Resolution No. 74, of 1931, as at present in force, which are suspended until June 30, 1934, and on said date said Act No. 40, of 1931, and Joint Resolution No. 74,

of 1931, as at present in force, shall be in full force and their provisions restored as if this Act had not been approved.''

And the Treasurer alleges that in February 1934 when the petitioner paid the taxes to which the two causes of action alleged in the complaint refer, Act No. 40 of 1931 was suspended, and that Act No. 15 of August 24, 1933 was in force at the time; and that through the reference made under Section 1 to the Internal Revenue Law, the latter was also effective as amended up to the 24th of August, 1933.

The Internal Revenue Law—No. 85 of 1925 (p. 584)—was amended by Act No. 83 of May 6, 1931. The Sections pertinent to the case at bar, as amended by said act, read:

"Section 37.—Dealers shall be liable for the payment of the tax on all articles introduced by them whether for sale, transfer, use or consumption, upon introducing or upon coming into possession of the article or articles in Puerto Rico, or on transferring the same to another dealer or a consumer after their introduction.

"Section 38.—The user or consumer of a taxable article shall be liable for the payment of the tax upon introducing or coming into possession of the article for use or consumption in Puerto Rico, or upon transferring the same to another person for whatever purpose.

"Section 39.—The taxes hereby levied on taxable articles, in Puerto Rico, whether for sale, transfer, use or consumption in, or introduction into Puerto Rico, shall be levied in accordance with the - provisions of Section 4 of this Act, on all articles whose sale, transfer, use, manufacture, consumption or introduction is subject to the payment of excises under the provisions of Section 16, and such taxes shall be paid by the dealer or by the user or consumer, upon introducing or taking posession of the article, or on transferring or possessing the same whether by transfer or introduction, or by purchase, donation or otherwise, within the ten (10) days following the introduction of the article, or of having possessed or transferred the same or of possessing it by transfer, and pursuant to such rules as the Treasurer may by regulation prescribe; . . .

''. . . . . . . . . .

"Section 50.—Whenever a person obligated under this Act to pay an excise on articles manufactured, sold, transferred, used or consumed in, or introduced into Puerto Rico, fails to do so in the time and ·manner prescribed, besides being guilty of a misdemeanor, such

person shall pay in addition to said tax, as a part thereof and as a penalty, five (5) per cent of the amount due, and interest at the rate of one (1) per cent a month, to be computed from the date of expiration of the ten days' term allowed by Section 39 hereof, or as the Treasurer of Puerto Rico may by regulation prescribe."

And Section 7 of the amendatory Act No. 83 of 1931 (p. 504) *supra*, reads:

"Section 7.—From and after the date on which this Act takes effect, license and other taxes due to that date, and owing by any taxpayer to The People of Puerto Rico by virtue of the amended sections of the law and of the laws repealed, shall continue to subsist, and the Treasurer of Puerto Rico is hereby empowered to collect them in the manner provided in said repealed laws; *Provided,* That in the case of articles or goods included in this Act, introduced into Puerto Rico prior to the approval hereof, and not declared and liquidated by the Department of Finance for the purposes of taxation, shall pay the tax in accordance with the provisions herein contained, and pursuant to such rules and regulations as the Treasurer of Puerto Rico may prescribe for the purpose."

The latter two acts—No. 15 of August 24, 1933, as regards the substantive part, and the Internal Revenue Law of 1925, as amended by Act No. 83 of May 16, 1931, as regards the adjective part—are invoked by the Treasurer in support of his power to recover surcharges, interest, fines and costs on the gasoline imported on July 26, 1931, and also on that imported on January 19, 1934.

In order to determine which is the law applicable to the facts stated, we must determine first the dates on which the obligation on the part of the petitioning corporation of paying the taxes claimed by the Treasurer arose, on (*a*) the gasoline imported prior to July 24, 1931; (*b*) the gasoline imported on July 26, 1931; and (*c*) the gasoline imported on January 19, 1934.

(*a*) The law applicable to the gasoline imported prior to July 24, 1931, is Act No. 12 of April 21, 1930, which amended Sections 1 and 2 of Act No. 8 of May 11, 1927, which in its turn amended Sections 1 and 3 of Act No. 52 of July 21, 1925;

the latter act repealing paragraph 37 of Section 20 of the Excise Tax Law of July 28, 1923. None of said acts authorized the Treasurer of Puerto Rico to impose penalties like surcharges, interest, fines and costs, in case the tax was not paid within the term fixed by law. Section 4 of Act 52 of July 21, 1925, is the one that determines the moment in which the obligation of paying the tax is contracted. It reads:

"Section 4.—The tax prescribed by this Act on gasoline intended for sale or consumption in Puerto Rico shall attach thereto when such gasoline is on the market of Puerto Rico. Dealers shall make payment of the tax at the time of selling the gasoline. . . ."

Under the terms of Section 4, *supra,* the gasoline imported prior to July 24, 1931, was subject to a tax of 6 cents per gallon as soon as it was placed in the Puerto Rican market, that is, from the moment it was imported with the object of consuming or selling it in the island. And if the importing company failed to pay the tax within ten days following the date in which the gasoline was received in Puerto Rico, as provided by Treasury regulations, the Treasurer of Puerto Rico could, under Section 5 of the same act, bring a criminal prosecution for misdemeanor against the importing company and attach, seize and sell for the benefit of the government all the gasoline on which the tax had not been paid.

After carefully studying Act No. 12 of April 21, 1930 and all legislation on the subject prior thereto, we must hold that the Treasurer of Puerto Rico was not legally authorized to assess surcharges, interest, fines and costs on the petitioner for having failed to pay on time the tax on the 24,491 gallons of gasoline imported by it prior to July 24, 1931 and much less to collect said penalties through summary proceedings of restraint, attachment and sale at public auction of the property of the petitioner; and the he was neither authorized to summarily attach, seize and sell even if it was to recover the tax, other property than the same gasoline on which the tax had not been paid.

(*b*) The gasoline (155,827.52 gallons) received in Puerto Rico by the petitioner on July 26, 1931, was subject since then to the provisions of Act No. 40 of April 24, 1931, which became effective July 24 of the same year. The petitioner has so admitted in paying the tax at the rate of 7 cents per gallon fixed by said act, the same expressly repealing Act No. 12 of April 21, 1930.

The new act, No. 40 of 1931, introduced the change of considering the tax as an internal one and of authorizing the Treasurer to collect the same subject to the provisions of the Internal Revenue Law. Said Act No. 40 contains no penal clause, but the Treasurer attempts to derive his authority for imposing the penalties involved herein, from the power granted to him by Section 1 of said act which authorizes him to assess the tax subject to the provisions of the Internal Revenue Law.

Hence, we must decide first whether the Internal Revenue Law (Act No. 85 of August 20, 1925) effective July 26, 1931, when the gasoline was imported, authorizes the Treasurer to assess the penalties and, second, whether said penalties may be legally incorporated to Act No. 40 of 1931 by the mere reference made to the Internal Revenue Law in Section 1 of said law.

Sections 75 and 105 of the aforesaid Internal Revenue Law simply authorize the Treasurer to impose administrative fines, not to exceed $25, for each violation of the law or the rules, and to collect the tax through the attachment and sale at public auction of the property of the debtor, in conformity with the procedure established by Sections 335–352 of the Political Code. In none of the acts cited have we been able to find legal authority justifying the attachment levied and the sale which the Treasurer has attempted to make, with the object of collecting surcharges, interest and penalties not provided by law, and consequently we have to decide that the said attachment is contrary to law and that the same should be dissolved.

(c) The law applicable to the gasoline imported, (1,243,705 gallons) on January 19, 1934, is Act No. 15 of 1933, which amended and suspended Act No. 40 of 1931 and became effective August 24, 1933. Section 1 of said act, *supra,* provides that the tax on gasoline shall have the character of an internal revenue tax *and shall be collected by the Treasurer of Puerto Rico subject to the provisions of the Internal Revenue Act, as soon as the gasoline is introduced into Puerto Rico.* The Internal Revenue law in force at the time this quantity of gasoline was imported, was Act No. 85 of 1925, as amended by Act No. 83 of 1931. Sections 39 and 50 of the Internal Revenue Law, as amended by Act No. 83 of 1931 and Section 7 of this latter law, *ubi supra,* are invoked by the appellant Treasurer as basis of his alleged legal power to charge, not only the penalties imposed on the quantity of gasoline imported on January 19, 1934, but also by giving retroactive effect to the amendments, the surcharges, interest and penalties imposed to the items discussed under paragraphs (a) and (b) *supra.*

■ We can neither accept nor sanction the practice which the Treasurer attempts to follow, of applying to omissions incurred or to acts carried out at the time acts Nos. 12 of 1930 and 40 of 1931 were effective, the penalties fixed and authorized by laws subsequent to said acts or omissions, as for example, by Act No. 83 of 1931. The provisions of Section 50 of the Internal Revenue Law as amended by Act No. 83 of 1931, *supra,* being of a penal character, may not be applied retroactively either by express legislative provision or by judicial interpretation, as that is contrary to the bill of rights of our Organic Act. Consequently, we hold that the interest, surcharges and costs levied on the gasoline imported on July 26, 1931, are unjustified and unlawful and that the court below acted correctly in issuing the writ of injunction to prevent their collection in a summary manner.

■ The fine of $100 assessed by the appellant Treasurer on the gasoline imported on July 26, 1931 is also untenable.

Section 88 of the Excise Tax Law (No. 68 of July 28, 1923), which authorizes the Treasurer of Puerto Rico to assess administrative fines, was kept in full force and virtue by the express provisions of Section 6 of Act No. 52 of July 1925, which repealed paragraph 37 of Section 20 of the Excise Tax Law and withdrew gasoline from the list of articles subject to the payment of excises. Act No. 40 of April 24, 1931, which, as we have decided, is the one applicable to the gasoline imported on July 26, 1931, is a complete law on the subject of taxes on gasoline and contains no provision authorizing the imposition of penalties. Section 3 of said Act expressly repeals Act No. 12 of April 21, 1930, as well as any other law or part of law in opposition thereto. It contains no provision incorporating thereto the penal clauses of other tax or excise act, nor to leave in force as regards the non-payment of the tax on gasoline, the aforesaid Section 88 of the Excise Tax Law of 1923.

The jurisprudence that we have examined supports the rule laid down by the weight of authorities, that when a statute imposing penalties on taxpayers in default is repealed, said penalties are assessable no longer and that the right to recover penalties imposed prior to the repeal of said act is lost unless such right is expressly reserved by the repealing act. See *Western Union Tel. Co.* v. *Brown,* 8 N. E. 171; and *Dixon* v. *Jersey City,* 37 N. J. Law, 39, 42, wherein it was held that the repeal of the statute, after a penalty was imposed, amounts to the remission of the penalty and has the effect of the pardon which condones the punishment and extinguishes the guilt. See also 39 C. J. 1484.

Let us examine now whether the penalties assessed by the Treasurer on the gasoline imported on January 19, 1934, are authorized by law.

The penalties imposed by the Treasurer on the petitioner are those authorized by Section 50 of the Internal Revenue Act, as amended by Act No. 83 of May 6, 1931, the provi-

sions of which are attempted to be incorporated to Act No. 15 of August 24, 1933, in view of the reference made in Section 1 thereof to the Internal Revenue Law, as the act to be followed by the Treasurer in the collection of the tax.

We shall ignore the question of whether the incorporation by reference attempted to be made is agreeable to the provisions of Section 34 of the Organic Act. And assuming that the incorporation has been correctly made, let us see whether the penal provisions of Section 50 of the Internal Revenue Law, *supra,* may apply somehow to the case at bar.

Section 50 provides that *whenever a person obligated under this act* (Internal Revenue Law) *to pay an excise* on *articles introduced into Puerto Rico,* fails to do so, besides being guilty of a misdemeanor shall pay in addition to said tax the penalties fixed by said Section. It is evident, in accordance with the rule of legal interpretation that compels us to construe statutes of a fiscal nature and especially those imposing penalties, in favor of the taxpayer and against the state, that the penalties authorized by Section 50 of the Internal Revenue Law may only be levied on those persons who being bound to pay the excise fixed by the same Internal Revenue Law, fail to pay the same.

Which are the excises fixed by the Internal Revenue Law, the non-payment of which gives rise to the penalties mentioned under Section 50? The reply is found in Section 39 of the same Internal Revenue Law, *supra,* which prescribes that the taxes shall be levied on all articles whose sale, consumption or introduction is subject to the payment of the excises under the provisions of Section 16 of the Internal Revenue Law. We have carefully read Section 16 and have been unable to find "gasoline" among the articles subject to excise.

If it was the intention of the legislature to extend the penalties prescribed by Section 50 of the Internal Revenue Law, *supra,* to the non-payment of the taxes on gasoline, it

could have expressed that intention by stating under Section 1 of Act No. 15 of August 23, 1933 that the tax would be collected subject to the Internal Revenue Law and that nonpayment of same would also be punished in conformity with said act. The legislature did not do so and its silence cannot be cured by an unjustified and forced judicial interpretation, in view of the limitations contained in the act which by reference is attempted to incorporate to Act No. 15, *supra.* And the alleged punitive purpose of the legislature could have been carried out in an easier way by simply amending Section 50 of the Internal Revenue Law, by extending its penalties not only to the persons failing to pay the taxes fixed by Section 16 of said act, but also to those who fail to pay the tax on gasoline.

 It is not the duty of this Court to correct the deficiencies it may find in the legislation submitted to its determination and construction. The only thing that this Court may do is to point out those deficiencies, so that they may be corrected by the legislative power. And when the legislation is of a fiscal or penal nature and the determination thereof leaves serious doubts in the mind of the judge as regards the intention of the legislature, it is our duty to give the benefit of said doubts to the taxpayer. Consequently, we hold that the Treasurer is not legally authorized to fix the penalties that he has assessed and attempted to collect in the case at bar. See: *Gould* v. *Gould,* 245 U. S. 151; *U. S.* v. *Field,* 225 U. S. 257; *U. S.* v. *Riggs,* 203 U. S. 136; *U. S.* v. *Merriam,* 263 U. S. 179; *Crooks* v. *Harrelson,* 282 U. S. 55; *First Trust & Savings Bank* v. *Smietanka,* 268 Fed. 230; and *Elliot* v. *Railroad Co.,* 99 U. S. 573, wherein the Federal Supreme Court held that penalties are never extended by implication and that unless expressly imposed, they cannot be enforced.

 The appellant Treasurer has alleged that the lower court acted erroneously in assuming jurisdiction and in is-

suing the injunction, first, because the petitioner had an adequate remedy for its protection, that is, paying under protest the amounts claimed by the Treasurer, and second, because the law prohibits the issuance of an injunction to prevent the collection of taxes, except in exceptional cases.

It appears from the record that the petitioner purchased internal revenue stamps in an amount sufficient to cover all the sums claimed by the Treasurer as gasoline tax; that it adhered said stamps to the corresponding invoices cancelling the said stamps and delivering the invoices to the Treasurer; and that in the case in which the Treasurer refused to accept the invoices because the petitioner refused to pay the penalties which it considered unlawful, the petitioner deposited the invoices in the Clerk's office at the disposal of the Treasurer. Thus, the Government has received and deposited in the Treasury, without any restriction, through the sale of stamps to the petitioner, an amount equal to the sum total of the taxes claimed by the Treasurer of Puerto Rico on the three items of gasoline involved herein. Payment under protest is not an adequate remedy in this case, for as the Treasurer has attached property of the petitioner for the total amount of the tax already paid and furthermore for the amount of the penalties in question, the petitioner would have been bound to stop the sale at public auction, to pay a second time an amount equal to that it had already invested in excise stamps and to pay furthermore the amount of the penalties.

It is true that the general rule is that courts of equity do not intervene by injunction to prevent the collection of taxes, by the mere allegation that said taxes are unlawful or violate some constitutional provision. This Supreme Court has acknowledged and applied that doctrine in numerous decisions, which being so well known it is unnecessary to mention. But it is true also that courts of equity grant the remedy of injunction to prevent the collection of taxes, when it clearly

appears that the tax is unlawful and that the taxpayer does not have an adequate remedy at law or because the allowance of the collection of the tax would cause him irreparable damages or would give rise to a multiplicity of suits. Federal courts have granted injunctions in numerous cases to prevent the collection of taxes, in spite of the express prohibition of the federal statutes (Rev. Stat., sec. 3224, U.S. C.A., Title 26, sec. 154) when the circumstances of the case are extraordinary and sufficient to justify the intervention of a court of equity by avoiding irreparable damages or a multiplicity of suits. See: *Raymond* v. *Chicago Traction Co.,* 207 U.S. 20; *Dodge* v. *Brady,* 240 U.S. 122, 126; *Hill* v. *Wallace,* 259 U.S. 44; *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U.S. 393; *Standard Nut Margarine Co.* v. *Rose,* 49 F. (2) 85; *Long* v. *Rasmussen,* 281 Fed. 236; *Miller* v. *Nut Margarine Co.,* 284 U.S. 498; *Acklin* v. *People's Savings Assn.,* 293 Fed. 392.

This Supreme Court has followed the doctrine laid down by federal jurisprudence and has upheld the power of our courts, in extraordinary cases, to protect citizens against arbitrary or illegal assessments from the fiscal agents of the government. See *González* v. *Gromer,* 16 P.R.R. 1; *Durlach Brothers* v. *Treasurer,* 47 P.R.R. 617.

The case at bar presents so extraordinary facts and circumstances, that in our opinion the lower court properly exercised its discretion in issuing the writ of injunction. The taxpayer paid to the Treasurer the exact amount claimed as tax, refusing solely to pay what was claimed as penalties which the Treasurer was not authorized to fix. The Treasurer exceeded his authority in summarily attaching and attempting to sell at public auction property sufficient to cover the amount of the taxes already paid in excise stamps, plus the amount of the penalties. The legal remedy of paying under protest was, within the circumstances of the case, clearly

inadequate, as the taxpayer would have been bound to pay a second time the amount of the tax and to bring two suits, one to recover the amount of the stamps cancelled and the other to recover the amount of the penalties unlawfully assessed. The prevalence of the attachment and the sale at public auction of property that was necessary for the business of the petitioner would undoubtedly cause the latter irreparable damages.

In our opinion the order appealed from should be and is hereby affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.